**In re the Marriage of Raymond BOONE, Appellant,**

v.

**Tammy BOONE, Appellee.**

No. 45A03–0906–CV–243.

Court of Appeals of Indiana.

March 31, 2010.

Edward J. Calderaro, Sachs & Hess, P.C., Schererville, IN, Attorney for Appellant.

## OPINION

FRIEDLANDER, Judge.

Raymond Boone (Father) appeals from the decree dissolving his marriage to Tammy Boone (Mother), presenting the following restated issue for review: Did the trial court abuse its discretion in ordering Father to pay child support retroactive to a date preceding the filing of the petition for dissolution?

We reverse and remand.

The facts are that Father and Mother were married on September 5, 1998. At that time, the parties had one child, C.B., who was born earlier that year. Father and Mother physically separated in December 2002. Following the separation, Father financially provided for C.B. by sending money to Mother every other

week. In 2006, Father filed a petition for dissolution of marriage in Illinois, and Mother instituted proceedings to collect child support through an Illinois Title IV–D office. The Illinois court consolidated the cases, but ultimately dismissed the action for lack of jurisdiction because Mother lived in Indiana. Father commenced the instant action by filing his petition for dissolution of marriage in Lake County Circuit Court on November 7, 2007. Father was represented by counsel in the Indiana dissolution action but Mother was not.

Although Mother initially applied to an Indiana Title IV–D office for assistance in obtaining child support, she did not follow through in that endeavor. She broached the topic of child support for the first time in this action at a June 11, 2008 pretrial conference in which she stated to the court, "I have a question. I've been having problems getting child support, which I haven't gotten for two years from my husband." *Transcript* at 6. After questioning Mother and determining that there was no outstanding support order entered against Father, the court informed her, "You would need to request a provisional order, a provisional hearing." *Id.* In fact, Mother never sought the Indiana court's assistance in collecting child support from Father until the final hearing in the dissolution proceeding.

At the November 20, 2008 final hearing, Mother requested that the trial court impose a support obligation retroactive to June 1, 2006, which was the approximate date she alleged Father stopped sending biweekly support payments, and was more than seventeen months before the instant dissolution petition was filed. During the period that Father did not pay biweekly support, he made in-kind payments to Mother for C.B.'s support. At the conclu-

sion of the hearing, the court granted the dissolution of marriage and granted Mother's request for child support retroactive to June 1, 2006. The court also determined that Father was entitled to credit for loan payments he made on Mother's behalf and for money Father spent on clothing for C.B. during that period. The January 15, 2009 dissolution decree provided in relevant part:

> As to wife's request for a child support arrearage, the Court grants wife['s] request for retroactive application of the child support to June 1, 2006. Therefore, as of November 24, 2008, one hundred twenty-nine (129) weeks have passed and there is therefore a child support obligation in the amount of Fourteen Thousand Five Hundred Seventy–Four and 42/100 ($14,574.42) Dollars.

*Appellant's Appendix* at 11.

On February 16, 2009, Father challenged the entry of a retroactive child support order via a motion to correct error. In response, Mother filed a pleading entitled "Opposition to Petitioner's Motion to Correct Errors Pursuant to Trial Rule 59". *Id.* at 29. On March 24, the court held a hearing on the motion to correct error and other pending post-dissolution motions. The court denied Father's motion to correct error, stating in relevant part as follows:

The Court FINDS as follows:

1. Parents have a common law duty to support their children which exists apart from any court order or statute. *Matter of S.T.,* 621 N.E.2d 371 (Ind.App.1993); *Moody v. Moody,* 565 N.E.2d 388 (Ind.App.1991); *In re Marriage of [Truax],* 522 N.E.2d 402 (Ind.App.1988); *Bales v. Bales,* [801 N.E.2d 196, 199] (Ind.App.

2004) [, *trans. denied* ].[1]  It is a parents' [sic] duty to support their [sic] children from birth until legal termination of such duty. *Denning v. Star Pub. Co.* [94 Ind.App. 300], 180 N.E. 685 (1932); *Claypool v. Claypool,* 712 N.E.2d 1104 (Ind.App.1999) [, *trans. denied* ]; *Huff v. Merchants Parcel Delivery Co.* [106 Ind.App. 110], 18 N.E.2d 471 (1939).

2. A trial court is obligated to ensure that the best interest of the children be advanced so the trial court is afforded broad discretion in fashioning support orders. *Glover v. Torrence,* 723 N.E.2d 924 (Ind.App.2000).

THEREFORE, the Court DENIES the Father's Motion to Correct Errors on the issue of retro[ ]active child support.

*Id.* at 15. Father appeals this ruling.

■ Father contends that the trial court erred in awarding child support retroactive to a time prior to the filing of the instant dissolution petition, i.e., June 1, 2006. Decisions concerning child support are generally left to the trial court's sound discretion. *Tatum v. Tatum,* 773 N.E.2d 371 (Ind.Ct.App.2002), *trans. denied.* We will not disturb a trial court's determination in that regard absent an abuse of discretion or a determination that the order under consideration is contrary to law. *Id.* In conducting this review, we do not weigh the evidence or judge the credibility of witnesses, but rather consider only the evidence most favorable to the judgment, together with the reasonable inferences which can be drawn therefrom. *Lepper v. Lepper,* 509 N.E.2d 818 (Ind.1987).

■ We note at the outset that Mother did not file an appellee's brief. When an appellee fails to submit a brief, we apply a less stringent standard of review with respect to the showing necessary to establish reversible error. *Zoller v. Zoller,* 858 N.E.2d 124 (Ind.Ct.App.2006). In such cases, we may reverse if the appellant establishes prima facie error, which is an error at first sight, on first appearance, or on the face of it. *Id.* Moreover, we will not undertake the burden of developing legal arguments on the appellee's behalf. *Id.*

Father contends the court abused its discretion when it ordered him to pay child support retroactive to a time before the filing of this dissolution action, and therefore obviously before the parties had even requested the court establish a support obligation. In the alternative, he contends that an initial support order is analogous to a modification of child support and, therefore, should not be retroactive to a date preceding the request for support. Our courts have held that an initial child support order can be retroactive to the date of the petition for dissolution. *See Bill v. Bill,* 155 Ind.App. 65, 290 N.E.2d 749 (1972). The question of whether an initial support order can be retroactive to a date preceding the date of a petition for dissolution, however, is a question of first impression.

It is well-settled that parents have a common law duty to support their children. *See Mariga v. Flint,* 822 N.E.2d 620 (Ind.Ct.App.2005), *trans. denied.* Thus, there is no question that Father had a duty to support C.B., predating and entirely independent of the dissolution proceedings. The question in this case is whether the Lake Circuit Court had authority to order Father to pay support in the form of child support payments during a time when the parties' marriage was, in

---

1. The trial court incorrectly cited *Bales* as appearing at 877 N.E.2d 217. That is the citation for our 2007 decision in *In re B.R.,* 877 N.E.2d 217 (Ind.Ct.App.2007). *In re B.R.* stands for the proposition that a parent has a common law duty to support his child.

the eyes of the law, intact. The trial court concluded that it possessed such authority based upon the rationale that the duty of support exists, that it had not legally terminated in this case during the relevant time period, and that it was in C.B.'s best interest to receive the support. This analysis, it seems to us, begs the question of whether the court had the power to issue such an order in the first place. We have reviewed this rationale and, especially in light of the fact that Mother has not filed an appellee's brief in support of the trial court's action, we have carefully considered the thoughtful and capably expressed views of our dissenting colleague. Having done so, we believe the dispositive question here is whether an Indiana court has authority to reach into an intact [2] marriage—for that is what occurred here when the support order covered a time before the filing of the dissolution decree—and order one or both of the parties to pay traditional child support to the other on behalf of a child or children of the marriage. We conclude that it does not.

Our search for authority for ordering child support payments that retroactively reach into the marital home prior to the filing of a dissolution petition and impose a child support obligation reveals no such cases. Thus, to do so would carve out new territory in Indiana law. We note the dissent's threshold reasoning that nothing in Indiana's Child Support Guidelines *prohibits* ordering the payment of retroactive child support. We do not mean to be flip in observing that there is much the Guidelines do not explicitly prohibit, but we do not agree that this amounts to a tacit approval of all such non-prohibited conduct or action. Indeed, we conclude that the failure to *approve* of retroactive child support predating the filing of a dissolution decree is more indicative of the Indiana Legislature's views on the subject, because the Legislature has clearly demonstrated the ability to authorize retroactive child support when it is so inclined. *See, e.g.,* Ind.Code Ann. § 31–14–11–5(1) (West, PREMISE through 2009 1st Special Sess.) (in a paternity action, a child support order "may include the period dating from the birth of the child"). Moreover, in the context of petitions for modification of support, our Supreme Court has recently stated, "[t]he modification of a support obligation may only relate back to the date the petition to modify was filed, and not an earlier date, subject to two exceptions not applicable here." *Becker v. Becker,* 902 N.E.2d 818, 820 (Ind.2009). The Court went on to note there are two limited exceptions: instances (1) where the parties have agreed to and have implemented an alternative method of payment that substantially complies with the spirit of the dissolution decree; or (2) where the obligated parent takes the child into his or her home, assumes custody, provides necessities, and exercises parental control for a sufficient period of time that a permanent change of custody is exercised. *Becker v. Becker,* 902 N.E.2d 818. In making these observations, we are not confusing the

---

2. We believe our colleague in dissent makes too much of our use of the term "intact" here. By no means do we wish to create a magic word or a term of art in this context. We merely seek to describe the universe of settings in which court-ordered child support obligations arise. Heretofore, that has included parents who never married, or divorced or divorcing parents. We can find no cases in which a court has retroactively imposed a support obligation on a married parent who was not at the time for which the retroactive support was deemed to have been due either legally·separated, divorced, or divorcing. Thus, our use of the term "intact" herein is merely meant to describe the legal status of the married partners in that they have not invoked the power of the court to intervene in the marriage, whether for purposes of child support or otherwise.

principles governing the initial establishment of support with those governing support modifications. We cite the latter merely to illustrate the point that retroactivity must be specifically authorized in any context.

In summary, we conclude that the general rule in Indiana is that retroactive modification of child support is understood to be prohibited except where explicitly authorized. Thus, modification can relate back in time only to the filing of a request therefor, except in the case of a paternity action, where our Legislature has explicitly determined that it can relate back to the birth of the child. The rationale cited by the trial court in support of its order, i.e., that a parent has a common-law duty of support and this duty had not terminated in the instant case, applies equally as well in the context of modification of existing orders and would undercut that longstanding rule.

Finally, and perhaps just as significantly, we cannot help but note that the cases cited by the dissent and in this discussion involving the imposition of support obligations are all cases involving one of two scenarios. The first involves the payment of child support by parents who, at the time the obligation was imposed, were either divorced or divorcing. No one can doubt that our courts have the authority to order divorcing or divorced parents to pay child support, but the instant case is not such a case. As set out briefly above, the other scenario involves parents who were never married, the most common of which is cases in which paternity was an issue. Again, in such cases, based upon the common-law duty of support cited above, and by authority granted specifically by statute, *see* I.C. § 31–14–11–5, our courts may not only impose a child support obligation, but may also make that obligation retroactive, commencing even before the date of

the establishment of paternity, all the way back to and including the date of the birth of the child. *See, e.g., In re Paternity of McGuire–Byers,* 892 N.E.2d 187 (Ind.Ct. App.2008), *trans. denied.* The latter scenario is the most closely analogous to the situation before us here because it involves the imposition of a support obligation before any request therefor has been made. It is this definition of "retroactivity" that we consider in this case, i.e., the imposition of a financial obligation commencing before the petition for payment of that obligation was even submitted. Lacking the statutory authorization present in the paternity setting represented by *In re Paternity of McGuire–Byers,* and notwithstanding the fact that the order in this case reaches back to a time at which the parties' marital relationship was fully intact, at least in the eyes of the law, the trial court here invaded that realm (i.e., a legally intact marriage) and imposed an obligation heretofore reserved only for those cases in which the parties were unmarried, divorced, or divorcing. This is a step we are not willing to take.

█ In dissolution actions, the machinery of the courts engages when the dissolution petition is filed. For instance, this is the point at which the marital pot closes. *See Granzow v. Granzow,* 855 N.E.2d 680 (Ind.Ct.App.2006). If child support is requested, pursuant to the foregoing authority, this has heretofore been the point at which support commences or can commence. Prior to this event (i.e., the filing of a dissolution petition), the court has no jurisdiction to issue orders pertaining to matters involving the children of the marriage except in situations involving criminal neglect or abuse. There are no such allegations in the instant case. Until a dissolution petition is filed, the parents are free to decide between themselves financial matters involving the children, such as

whether they will pay an allowance, whether they will buy cars for their children, or whether they will pay for a college education, to cite just a few examples. This autonomy ends with the filing of a dissolution petition. With the filing of the petition, the parties immediately confer considerable authority upon the court to make decisions, from that time forward, previously reserved only for the parents. In our view, that rule and the bright line it represents should remain inviolate.

We pause to stress again that we are mindful that Father's common-law duty to support his children did not abate after he had moved out of the house and before the dissolution petition was filed. Yet, in draconian terms, the dissent opines that our conclusion in this case will immunize deadbeat parents from legal accountability, give married deadbeat parents a "free pass" for shirking their duty, and deprive children of an adequate remedy therefor. To the contrary, our holding in no way diminishes or abrogates the common-law duty of support, nor does it diminish the means by which the State or custodial parents may compel a recalcitrant or neglectful parent to fulfill that duty. Rather, we merely decline to *add* a means of imposing a support *arrearage*, for that is exactly what the rule proposed and embraced by the dissent would accomplish.

In any event, we must presume that Wife was satisfied with whatever contribution Father was making to support the child because she never engaged the courts, as was her right, to seek more than he was giving. We note in this regard Father's assertion on appeal that he paid "in-kind child support" during that period of time. *Appellant's Brief* at 7. We do not know exactly what that entailed, but at that point in time, i.e., before a petition for dissolution or legal separation was filed, or before a petition to establish child support

was filed, the matter was between them and them alone. We stress again that Mother could have engaged the court's authority at any time, yet chose not to. There were legal avenues open to Mother to compel Father to contribute more support if she believed he was neglecting his duty to do so. For reasons unknown to us, however, she either neglected to pursue them or eschewed the option.

In the final analysis, we decline to do what our Legislature has not seen fit to authorize, i.e., permit a court to enter a child support order retroactive to a time before the request therefore was submitted, and indeed before the parties were legally separated or had petitioned for divorce. Therefore, we reverse that portion of the dissolution order and remand with instructions to modify the order of support consistent with the principles set out in this opinion.

Judgment reversed and remanded.

BRADFORD, J., concurs.

NAJAM, J., dissents with a separate opinion.

NAJAM, Judge, dissenting.

I respectfully dissent. Indiana law does not prohibit trial courts from entering retroactive initial child support orders. As the majority acknowledges, a parent has a common law duty to support his child. That duty begins when a child is born, not when a petition for dissolution of marriage is filed.

Indiana Code Section 31–16–2–2 codifies the common law duty of a parent to support his child and provides that "[a] cause of action for child support is established." This cause of action is unlimited. A husband and father at common law has the duty and obligation to support his children without any court decree or order. *Crowe v. Crowe*, 247 Ind. 51, 211 N.E.2d 164, 166

(1965). "A court order requiring the payment of this support does nothing more than carry out the common law principle involved." *Id.*

In interpreting a statute, we must consider not only what the statute says but what it does not say. *Curley v. Lake County Bd. of Elections & Registration*, 896 N.E.2d 24, 37 (Ind.Ct.App.2008) (quotation omitted), *trans denied.* In construing a statute, we cannot supply missing terms. *Uhlman v. Panares*, 908 N.E.2d 650, 657 (Ind.Ct.App.2009). The courts cannot extend the plain meaning of a statute by the substitution, or addition, of words or phrases, without encroaching upon the legislative branch of government. See *id.* (quotation and citation omitted). Neither this statute nor any other related statute prohibits or otherwise limits retroactive initial child support orders. Thus, I cannot agree with the majority's holding that the trial court lacked authority to enter a child support order retroactive to a date preceding the filing of the petition for dissolution when there is no such provision to be found in the child support statutes.

Child support is the right of a child, not of a parent, and a parent holds the child support payments in trust for the child's benefit. *See Warsco v. Hambright (In re Hambright)*, 762 N.E.2d 98, 101 (Ind. 2002). A request for child support may be brought whether the parents are, were, or have never been married. *See* Ind.Code § 31–16–2–2. And, under Indiana Code Section 31–16–6–1, a request for an order of child support may be filed in a dissolution action, an action for legal separation, or in a separate action for child support. Even while married, Mother could have instituted a separate action for child support under Indiana Code Article 31–16 and, in that case, she could have requested support retroactive to a date preceding that request. The fact that Mother re-quested retroactive child support within a dissolution proceeding does not bar her request.

It is well-settled that parents have a common law duty to support their children. *Mariga v. Flint*, 822 N.E.2d 620, 630 (Ind.Ct.App.2005), *trans. denied; Bales v. Bales*, 801 N.E.2d 196, 199 (Ind.Ct. App.2004) (citing *In re S.T.*, 621 N.E.2d 371, 373 (Ind.Ct.App.1993)) *trans. denied.* Child support obligations arise out of a natural duty of the parent. *Pettit v. Pettit* 626 N.E.2d 444, 445 (Ind.1993). The majority agrees that there is no question that Father had a duty to support the Child that predated and is entirely independent of the dissolution proceedings. Nevertheless, notwithstanding the undeniable common law duty and Father's particular duty, the majority concludes that the dissolution court did not have "authority to reach into an intact marriage" to enforce Father's child support obligation. Op. at 653.

According to the majority, until a petition for dissolution has been filed, a marriage is deemed "intact," and the parties to the marriage are not accountable to the courts for their child support obligation. This cannot be. Our courts routinely delve into the facts and circumstances of a marriage as they existed prior to a petition for dissolution when, for example, the courts determine marital income, assets, liabilities, and whether a dissipation of assets has occurred. The majority posits that the Boone marriage was an "intact marriage in the eyes of the law." But the term "intact marriage" is not a defined term in the law, and the term does not appear in our statutes. The plain meaning of the term "intact" is "untouched esp. by anything that harms or diminishes: left complete or entire: uninjured." Webster's 3d New Int'l Dictionary at 1173 (2002). The Boone marriage was not intact for many years, and the trial court found that

Father had discontinued the support for his child some eighteen months before he filed the petition for dissolution.

The majority opinion immunizes the parent who fails or refuses to support his child from any accountability or consequences if his unpaid child support obligation accrues before a petition for dissolution of marriage is filed. For those child support offenders, the majority ignores the common law duty and nullifies the statutory cause of action and remedy for not supporting a child. As our Supreme Court noted in *Pettit,* a remedy at law that is ineffective in practice is not an adequate remedy. 626 N.E.2d at 446. The majority's interpretation gives the married parent who fails to support his child a free pass and deprives the child who is not supported of an adequate civil remedy.

In the majority's view, in a dissolution of marriage a parent's legally enforceable obligation to support his child is limited to prospective child support. The majority holds, in effect, that our child support statutes abrogate a married parent's common law child support obligation. That is, it is the majority's interpretation that the statutory cause of action for child support is not in furtherance of but in derogation of the common law duty to support one's child. I cannot agree.

Statutes in derogation of the common law are to be strictly construed. *Bartrom v. Adjustment Bureau, Inc.,* 618 N.E.2d 1, 10 (Ind.1993). This rule has special force when the statute affects a common law right or duty. *Id.* Our Supreme Court has consistently held that, "[w]hen the legislature enacts a statute in derogation of

the common law, this Court presumes that the legislature is aware of the common law [ ] and does not intend to make any change therein beyond what it declares in express terms or by unmistakable implication." *Id.* In cases of doubt, a statute is construed as not changing the common law. *Id.;* see *Dunson v. Dunson,* 769 N.E.2d 1120, 1124 (Ind.2002); *South Bend Cmty. Sch. Corp. v. Widawski,* 622 N.E.2d 160, 162 (Ind.1993). The majority's reasoning violates these rules of statutory construction. Here, there is no statute that expressly or by unmistakable implication restricts a parent's initial child support obligation. And, if there were any doubt, the common law controls.

Mother's failure to have requested child support before Father filed the petition for dissolution does not bar the entry of a support order retroactive to the date Father ceased supporting the child.[3] A rule that disallows the award of support retroactive to a date preceding the petition for support punishes the child for the custodial parent's failure to make an earlier request and rewards the recalcitrant parent. And the child loses the right to that support forever, contrary to the lodestar of support issues—the best interests of the child. *See Lambert v. Lambert,* 861 N.E.2d 1176, 1177 (Ind.2007). The legislature could not have intended that result. Nor can such be the policy of this state. Given the robust approach our legislature has taken to ensure that all children are supported adequately by their parents until the age of majority, I cannot imagine that the legislature intended for married parents to be granted a full reprieve from their child support obligations simply because they

---

**3.** The majority states that Mother "applied to an Indiana Title IV–D office for assistance in obtaining child support, but she did not follow through with that endeavor." Op. at 651. Mother initially applied for assistance from the Title IV–D office in Illinois. After she

relocated to Indiana, she applied to the Indiana Title IV–D office. At a pretrial hearing, Mother testified that the Indiana Title IV–D office "won't do anything about [her application.]" Transcript at 6.

are married. *See id.* at 1179 ("we cannot imagine that the legislature intended for incarcerated parents to be granted a full reprieve from their child support obligations while their children are minors").

The majority compares and confuses the retroactive modification of child support with an initial support order. The general rule in Indiana is that the retroactive *modification* of support payments is erroneous if the modification relates back to a date earlier than the filing of the petition to modify. *See Becker v. Becker,* 902 N.E.2d 818, 820 (Ind.2009). This rule limiting the retroactivity of child support modifications is necessary to prevent orders inconsistent with the changed circumstances rule. *See* Ind.Code § 31–16–8–1(b)(1); *Kruse v. Kruse,* 464 N.E.2d 934, 939 (Ind.Ct.App. 1984).[4] But no change in circumstances needs to be shown for a court to make an initial child support order. And this case is not about the retroactive modification of child support but about the entry of an initial child support order. The majority opinion also confuses initial child support orders with support orders in paternity actions, which are governed separately by the paternity statutes. *See* Ind.Code §§ 31–14–11–1 to –24.

The majority's holding cuts against the established common law tradition that has long held parents responsible for the support of their offspring. *See Lambert,* 861 N.E.2d at 1179. In this state, that tradition extends back a very long time. *Id.* (citing *Haase v. Roehrscheid,* 6 Ind. 66, 68 (1854) ("[it] is the duty of a father to support and educate his minor children")). Here, as in *Lambert,* it makes little sense to choose a path that cuts against the

grain of statute, legal tradition, and natural instinct so completely. *Id.*

In his brief Father asks this court "to set down a bright line rule that the day the petition is filed with the clerk's office is the furthest point a court may order retroactive child support." Appellant's Brief at 7. Again, I cannot agree. The "bright line rule" should be that a parent has both a common law and statutory duty to support his child, that as a matter of law a parent is accountable for his child support obligation from the child's birth until emancipation, and that whether the parent is married, was formerly married, or has never been married to the other parent, an initial child support order to enforce a parent's child support obligation is not limited to the period following the commencement of a cause of action for child support.

Finally, I note that nonsupport of a dependent child is a crime in Indiana. A parent who knowingly or intentionally fails to provide support to his dependent child may be charged with criminal nonsupport, which is a felony. *See* Ind.Code § 35–46–1–5. This criminal statute is based entirely on the common law rule that a parent has a duty to support his child. An outstanding child support order is not required for conviction. *See State v. Taylor,* 625 N.E.2d 1334, 1336 (Ind.Ct.App.1993) (holding that the State may prosecute for the crime of nonsupport even though no Indiana court has issued a support order). Thus, under the majority's holding, a parent in a dissolution proceeding is not subject to a retroactive initial child support order but may be subject to criminal liability arising from the same failure to pay child support. This is, of course, an absurd result. Our legislature could not

---

4. Former Indiana Code Section 31–1–11.5–17, the predecessor to Indiana Code Section 31–16–8–1, was in effect when we decided *Kruse.* Like the current statute, the former statute required a showing of a substantial change in circumstances for the modification of a child support order.

have intended to exclude retroactive child support claims from the civil docket, leaving criminal prosecution of the child support obligor as the only recourse for the pursuit of such claims.

In sum, I have found nothing in our statutes or case law that prohibits a retroactive initial child support order where, as here, there is an undeniable duty to support a child and the dissolution court has determined, as a matter of fact, that the parent stopped supporting the child. We are presented here with circumstances in which the parties were physically separated for five years before Father instituted this dissolution action. The record supports the judgment that Father first provided and then ceased to provide child support following the separation. On these facts, Father should not be allowed to escape his child support obligation merely because a dissolution proceeding was not initiated until long after the parties had separated. Thus, I do not agree with the majority's holding that the trial court abused its discretion when it ordered Father to pay child support retroactive to the date he ceased paying support, even though that date was before he filed the petition for dissolution.

