**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Feb 12 2013, 8:50 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JEFFREY A. BOGGESS**
Greencastle, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**FRANCES BARROW**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| PHILLIP RUMLEY, SR., | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 67A01-1207-DR-298 |
| | ) | |
| LAURIE FERGUSON, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE PUTNAM CIRCUIT COURT
The Honorable Matthew L. Headley, Judge
Cause No. 67C01-0105-DR-168

**February 12, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Phillip Rumley, Sr. (Father) appeals from the trial court's order calculating his outstanding child support arrearage owed to Laurie Ferguson (Mother). Father presents several issues on appeal, which we consolidate and restate as the following single issue: did the trial court abuse its discretion in determining Father's support arrearage?

We reverse and remand for further proceedings.

Mother and Father were married in 1992 and one child was born of the marriage. The marriage was dissolved in 1995, and pursuant to an agreed order, Father was ordered to pay child support in the amount of $68 per week. The divorce decree did not require Father to make his support payments through the clerk's office or specify another means by which Father was to make payment.

Father never made child support payments through the clerk's office, and Mother and Father dispute the extent to which Father made direct payments to Mother. On February 16, 2012, the State, through the Deputy Prosecuting Attorney for the Title IV-D Child Support Office, filed a Motion for Review asking the trial court to determine the amount of Father's child support arrearage. The trial court held a hearing on April 18, 2012, at which Mother and Father appeared. Mother testified that from 2001 forward, Father never paid support as ordered, with the exception of a three-year period during which Father made payments totaling $14,700. Although Mother had not kept written records of Father's payments or written him receipts, Mother testified that from September 5, 2008 until September 16, 2011, Father had paid her $200 every two weeks, except during the summers, when he paid half that amount. In addition, the State admitted into evidence the record of the Putnam County

2

Clerk indicating that Father had made no payments through that office and an arrearage calculation worksheet indicating that once Father was credited with the $14,700 in direct payments Mother acknowledged receiving, he had an outstanding arrearage of $22,066.

Mother and Father's son, who was a senior in high school at the time of the hearing, testified that from the time he and Mother moved back to Indiana from Tennessee at the beginning of his seventh grade year until "several months" before the hearing, his Father had given him $200 to give to his Mother at the conclusion of his visits, which took place every other weekend. *Transcript* at 38. Father also testified that after Mother and the child returned from Tennessee, he gave Mother $200 every two weeks through the child. Father did not keep any written records of these payments. Father admitted that he had not always been consistent in paying support, particularly while Mother and the child lived in Tennessee, but claimed that he had made up any deficits by paying additional support at other times. Father claimed that he had no outstanding support arrearage and had in fact overpaid support.

At the conclusion of the hearing, the trial court took the matter under advisement and ordered the parties to submit briefs on the issue of "whose duty it is to make sure support gets paid through the Clerk's Office." *Transcript* at 57. Both Father and the State submitted their briefs of May 21, 2012. In his brief, Father argued that he was not required to make support payments through the clerk's office and, even if he was, he should be given credit for nonconforming support payments made through the child. In its brief, the State argued that Ind. Code Ann. § 31-16-9-1 (West, Westlaw current through 2012 2nd Reg. Sess.) "requires payments to be made through the Clerk" and that "it is the duty of the individual making

3

payments to ensure payments are made through the clerk." *Appellant's Supplemental Appendix*[1] at 6, 7.

On June 11, 2012, the trial court entered an order concluding that Father owed Mother $22,066 in unpaid support. The order was accompanied by the following relevant findings and conclusions:

1. Mother, through the State of Indiana, alleges father is $22,066.00 in arrears.
2. Mother has given father a $14,700 credit toward the arrears because some payments were made in cash.
3. Father believes he is overpaid some $13,214.00.
4. The child at issue . . . claims that he would take money to mother from father each visitation, after his and his mother's return to Indiana from Tennessee for residency purposes.
5. Of course, neither mother [n]or father made out or kept receipts.
6. Father admits that he did not pay support ("I didn't give her a lot always") when mother was in Tennessee for three years.
7. Mother signed a statement that father was not in arrears and paid off the divorce decree obligation to her. Mother claims that is so he and his new wife could qualify/buy a new house. Father says it[']s because he paid her. Neither party can provide any such proof either way.

Conclusion

Court concludes that I.C. 31-16-9-1 and its predecessor require payment to be made through the Clerk of Court. Mother also gave father credit for cash payments, just not as much as he thinks he paid her. Court concludes that father has an arrearage of $22,066.00 as of April 13, 2012, as it is his obligation to show proof that he paid the support. Had he paid it through the Clerk or kept receipts, he would have overcome the presumption, but he didn't.

*Appellant's Appendix* at 10-11. Father now appeals.

We first note that the trial court entered findings of fact and conclusions of law

---

[1] Father filed his Supplemental Appendix on November 30, 2012, the same date he filed his reply brief. *See* Ind. Appellate Rule 49(A) ("Any party may file a supplemental Appendix without leave of court until the final reply brief is filed.").

pursuant to Ind. Trial Rule 52(A). Accordingly, our standard of review is two-tiered: first, we determine whether the evidence supports the findings and, second, whether the findings support the judgment. *Marion Cnty. Auditor v. Sawmill Creek, LLC*, 964 N.E.2d 213 (Ind. 2012). We view the evidence in the light most favorable to the judgment and defer to those findings if they are supported by the evidence or any legitimate inferences flowing therefrom. *Id.* Legal conclusions, on the other hand, are reviewed de novo. *Id.*

The issue in this appeal is whether the trial court abused its discretion in finding that Father owed a $22,066 child support arrearage.

> Decisions concerning child support are generally left to the trial court's sound discretion. We will not disturb a trial court's determination in that regard absent an abuse of discretion or a determination that the order under consideration is contrary to law. In conducting this review, we do not weigh the evidence or judge the credibility of witnesses, but rather consider only the evidence most favorable to the judgment, together with the reasonable inferences which can be drawn therefrom.

*Boone v. Boone*, 924 N.E.2d 649, 652 (Ind. Ct. App. 2010) (internal citations omitted).

Father argues that the trial court abused its discretion by erroneously concluding that I.C. § 31-16-9-1 and its predecessor required payment through the clerk's office. Despite taking a contrary position in its trial brief, the State[2] implicitly concedes on appeal that the statute did not require payment through the clerk's office in this case. Nevertheless, the State responds that the trial court's ultimate arrearage determination was not affected by Father's failure to pay through the clerk's office. According to the State, the trial court's ultimate

---

[2] Because Mother assigned her support rights to the Title IV-D office, she does not participate separately in this appeal.

5

determination simply reflected a finding that Mother was more credible than Father. Specifically, the State argues "the trial court did not refuse to credit [Father] more than the $14,700 . . . because of the technicality that he did not pay through the clerk's office. From the trial court's perspective, it was a matter of proof—the merits of the evidence presented to it." *Appellee's Brief* at 6 (internal quotations omitted).

The relevant portion of I.C. § 31-16-9-1 and its predecessor provide that upon entering a child support order, "the court shall require that support payments be made through the clerk of the circuit court as trustee for remittance to the person entitled to receive payments, unless the court has reasonable grounds for providing or approving another method of payment." Father argues that the trial court's conclusion that I.C. § 31-16-9-1 required payment through the clerk's office was erroneous for a number of reasons,[3] one of which we find dispositive: the plain language of the statute places a duty upon the court entering the support order or dissolution decree to require that child support be paid through the clerk's office in the absence of some reason for approving an alternative payment method.[4] If the trial court does not enter such an order, the statute places no affirmative obligation on the child support obligor to pay child support through the clerk's office.

---

[3] Notably, Father points out that the divorce decree in this case was entered prior to the enactment of I.C. § 31-16-9-1 and its predecessor.

[4] The State seems to argue that the statute applied to the court entering the arrearage order in this case. Specifically, the State cites the language of I.C. § 31-16-9-1 before noting that the court below "had reasonable grounds to approve the $14,700 cash payments to Mother because she offered a sworn statement that she received this amount." *Appellee's Brief* at 7. By its language, I.C. § 31-16-9-1 clearly applies only to the court entering the support order, not the court determining the arrearage.

In this case, the agreed dissolution decree required Father to pay child support, but did not provide that he was to make payments in any specific manner. I.C. § 31-16-9-1 cannot be read to place an independent obligation upon Father to make payments through the clerk's office, and the State does not argue otherwise. Accordingly, the trial court erred when it concluded that I.C. § 31-16-9-1 required payment through the clerk's office.

Moreover, reviewing the record as a whole, it appears that the trial court's ultimate determination flowed at least in part from its erroneous conclusion that Father was required to pay support through the clerk's office and not, as the State claims, a determination of witness credibility. It appears from the transcript that the trial court assumed that child support payments were required to be made from the clerk, as it requested authority only on the issue of whose burden it was to see to it that payments were made in that fashion. Although Father argued in his trial brief that he was not required to pay through the clerk's office, the State in its brief argued that I.C. § 31-16-9-1 required payment through the clerk. In its order on arrearages, the trial court concluded that I.C. § 31-16-9-1 required payment through the clerk's office, and then went on to conclude that (1) Mother had "given Father a $14,700 credit toward the arrears because some payments were made in cash," (2) it was Father's "obligation to show proof that he paid support," and (3) if Father had paid through the clerk's office or kept receipts, "he would have overcome the presumption[.]" *Appellant's Appendix* at 11. Thus, the trial court seems to have concluded that because Father was required to pay through the clerk's office, his failure to do so standing alone constituted rebuttable proof that no support had been paid (aside from the amount Mother acknowledged

7

receiving). We cannot conclude that the trial court would have reached the same result had it properly noted that Father was not required to pay through the clerk's office.

This leads us to consider Father's next argument—that the trial court abused its discretion in erroneously concluding that he bore the initial burden of proving that he had paid support. *See Payson v. Payson*, 442 N.E.2d 1123 (Ind. Ct. App. 1982) (providing that the mother seeking to have an arrearage established had the burden of proving a support arrearage existed). The State does not dispute that Mother had the initial burden of establishing an arrearage, but argues that the trial court's order does not indicate that it allocated the initial burden to Father. Rather, the State claims that the trial court's order indicates that it determined Mother had set forth a prima facie case by presenting the clerk's record indicating that Father had not made any payments through that office, thereby shifting the burden to Father to prove payment. *See Earl v. Am. States Preferred Ins. Co.*, 744 N.E.2d 1025, 1027-28 (Ind. Ct. App. 2001) (noting that prima facie evidence is "'evidence as is sufficient to establish a given fact and which will remain sufficient if uncontradicted'" (quoting *Mullins v. State*, 646 N.E.2d 40, 50 (Ind. 1995))), *trans. denied*.

As an initial matter, we note that the trial court made no conclusion that Mother bore or satisfied any burden or established a prima facie case. On the contrary, the trial court concluded that "it was [Father's] obligation to show proof that he paid support" and Father could have "overcome the presumption" by paying through the clerk's office or keeping receipts. *Appellant's Appendix* at 11. Thus, it appears that the trial court allocated the initial burden to Father.

8

Moreover, Mother's argument that the clerk's record was prima facie evidence of an arrearage in this case is unavailing. In support of her argument, Mother cites *Payson v. Payson*, 442 N.E.2d 1123. In *Payson v. Payson*, the parties' dissolution decree required the father to make child support payments through the clerk's office. The mother subsequently petitioned to have the father held in contempt for failure to pay support and asked the court to enter a judgment for a support arrearage. At trial, the father testified and presented evidence indicating that he had made direct payments to the mother and to third parties on the mother's behalf, and owed no outstanding support. *Id.* The mother testified that father had made some direct payments to her, but there was still a substantial arrearage owing. The mother had kept no written record of the payments and her arrearage calculation was an estimate based solely on her recollection. She did not admit into evidence the clerk's record indicating that payments had not been made through that office. *Id.*

This court affirmed the trial court's conclusion that the father owed no outstanding support, holding that he was entitled to credit for payments made directly to the mother and on her behalf even though the payments were not made in the manner specified by the order. *Id.* The court also concluded that the mother had the burden of proving a support arrearage, which she had failed to carry. *Id.* The court held that if she had offered into evidence the clerk's record and the court order fixing the support obligation, she would have established a prima facie case, but because she failed to submit the record or to provide any other corroborative evidence to support her estimation of the alleged arrearage, she had not carried her burden. *Id.*

9

The State argues that it presented prima facie evidence of an arrearage by admitting the clerk's record into evidence and that Father thereafter bore the burden of rebutting the evidence. The State, however, ignores a key distinction between this case and *Payson v. Payson*. Under the terms of the support order in *Payson v. Payson*, the father was ordered to pay through the clerk's office, so it follows that a record indicating that he had not paid in the manner specified would constitute prima facie evidence of nonpayment. In this case, however, neither statute nor the dissolution decree required Father to pay through the clerk's office or use any other specific method of payment, and it is undisputed that Father never paid through the clerk's office. Instead, Father made cash payments to Mother which were delivered by the child. Under these circumstances, the clerk's record standing alone does not establish a prima facie case for an arrearage sufficient to shift the burden to Father.

In reaching our conclusion in this case, we make no comment on the credibility of either Father's or Mother's testimony, as it is not our prerogative to make such judgments. Rather, we reverse based solely on our conclusion that the trial court made legal errors in concluding that I.C. § 31-16-9-1 required Father to make support payments through the clerk's office and by allocating the burden of proof to Father. Nor do we address whether there was sufficient evidence in the record to support the judgment notwithstanding the legal errors. Because the trial court's ultimate conclusion may have been affected by its legal errors, we reverse and remand for further proceedings consistent with this opinion.

Judgment reversed and remanded for further proceedings consistent with this opinion.

NAJAM, J., and BRADFORD, J., concur.