## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 25 2017, 6:40 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

James W. Klenner
Whiteland, Indiana

ATTORNEY FOR APPELLEE

Matthew S. Schoettmer
Van Valer Law Firm, LLP
Greenwood, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| James W. Klenner, <br> *Appellant-Respondent,* <br><br> v. <br><br> Lisa M. Klenner, <br> *Appellee-Petitioner.* | July 25, 2017 <br><br> Court of Appeals Case No. <br> 41A01-1701-DR-71 <br><br> Appeal from the Johnson Superior Court <br><br> The Honorable Marla K. Clark, Judge <br><br> Trial Court Cause No. <br> 41D04-1311-DR-755 |

**Mathias, Judge.**

[1] The Johnson Superior Court entered a decree dissolving the marriage between James W. Klenner ("Father") and Lisa M. Klenner ("Mother"), and ordering Father to pay $101 per week in child support and $99 per week toward a child

support arrearage. Father appeals and presents three issues, which we renumber and restate as:

    I.   Whether the trial court abused its discretion by calculating Father's child support obligation using evidence of Father's income presented by Mother;

    II.   Whether the trial court abused its discretion by ordering Father to pay toward a child support arrearage;

    III.   Whether the trial court abused its discretion by not considering the wishes of the parties' children when determining parenting time; and

    IV.   Whether the trial court abused its discretion by declining to find Mother in contempt.

We affirm.

## Facts and Procedural History[1]

Mother and Father were married in June 1999. Mother and Father had three children: a daughter, T.K., born in December 2000, and two sons, N.K., born in May 2002, and T.J.K., born in August 2005.

On November 6, 2013, Mother filed a petition for legal separation, and, on April 30, 2014, filed a petition to dissolve the marriage. Mother and Father participated in mediation, which resulted in an agreement regarding issues of property and finances. Pursuant to the mediated agreement, Mother was to continue to live in the marital residence until March 1, 2015, at which time she

---

[1] Father has failed to provide us with a transcript of the evidentiary hearings in this case. We therefore take most of our statement of facts from the trial court's findings of fact included in the order being appealed.

would move out and Father would move in. Until that time, Mother was responsible for all household utilities, and Father was responsible for all other expenses associated with the home. Mother was to take any personal property in the home that she desired, except for the household appliances, Father's tools, and various items of personal property belonging to Father. The parties participated in further mediation in an attempt to resolve the issues of child support and parenting time, but they were unable to reach an agreement.

[5]     Following the separation, both parties were actively involved with their children. Once Father obtained housing after the separation, he and Mother shared custody in two-week time periods, with Father having the children six days, and Mother having the children eight days in each two-week period. Mother wished to make this arrangement permanent, whereas Father wanted equal parenting time. After Mother moved out of the marital residence, Father moved back in and lived there with the children; Mother bought a home nearby and lived there with the children. The children continued to attend schools in the same school system and enjoyed a positive relationship with both parents.

[6]     On May 27, 2015, Father filed a petition to have Mother held in contempt, alleging that she had removed fixtures from the marital home, damaged the home, removed Father's personal property, and failed to pay the sewer and water utility bills. Father's petition also sought a court order determining who would claim the children for tax purposes and a division of the homeowner's association dues for that year. Five days later, Father filed a petition requesting

the trial court to have an *in camera* interview with the children, which the court denied.

[7] On October 15, 2015, Mother filed a motion for the appointment of a parenting time coordinator, which the trial court granted the following day. The parties selected, and the trial court approved, Dr. John Ehrmann ("Dr. Ehrmann") to act as the parenting time coordinator. The parties attended two sessions with Dr. Ehrmann, after which Father asked him to discontinue his services, which he did. On June 1, 2016, Mother filed a notice of her intent to relocate.

[8] The court held a hearing on all pending motions on November 21, 2016. The court heard evidence that Mother is a pharmacist but is partially medically disabled and unable to work more than eighteen hours per week. She receives a disability payment, and her gross weekly income is $1,308.05. Father is employed by Indiana University, and his gross weekly income from this employment is $1,533.88. Father also does work for the Town of Whiteland, acts as a sport official, and has an independent consulting business. With these other jobs, Father earns an additional $105.19 per week, for a total gross weekly income of $1,639.07. Father also maintains medical and dental insurance for the children, which costs $16.00 per week.

[9] After Father moved out of the marital residence, he at first contributed to household expenses by depositing money into what was originally a joint bank account. However, Father stopped making such contributions on January 1, 2015. Father did help pay for some of the children's sporting activities. T.K. is a

competitive basketball player, and N.K. is a competitive swimmer. Father paid for N.K.'s swimming expenses and a portion of the basketball and school expenses for T.K.

[10] The trial court found that the children were, on the whole, well adjusted, although T.J.K. had some behavioral issues at school, which were addressed by working with the school. The children went to counseling to help them deal with the separation. At the time of the hearing, T.J.K. attended counseling regularly, T.K. still went to counseling as needed, but N.K. did not wish to continue. Father was not in favor of the children attending counseling.

[11] The trial court entered its Order on Pending Petitions and Decree of Dissolution of Marriage on December 14, 2016. This order provides in relevant part as follows:

> 34. An award of joint legal custody is in the best interest of the children. Accordingly, Mother and Father shall share joint legal custody of the parties' children. The parties shall work to improve their communication with each other, recognizing that each of them has strengths as a parent.
>
> 35. An award of joint physical custody is in the best interest of the children. Accordingly, Mother and Father shall share joint physical custody of the children. Absent an agreement in writing between the parties, Mother shall have primary physical custody on Sundays, Mondays, Tuesdays, and every other Friday and Saturday, including overnight. Father shall have primary physical custody on Wednesdays, Thursdays, and every other Friday and Saturday, including overnight. If the parties cannot agree on holiday parenting time, the holiday schedule in the Indiana Parenting Time Guidelines shall control, with Mother

designated as the custodial parent for this purpose only. In addition, each party shall be entitled to ten days uninterrupted parenting time during summer, and shall provide the other party with the time period elected as soon as possible, but not later than May 1 of each year. The parties shall follow all provisions of the Indiana Parenting Time Guidelines not in conflict with this Order, including the transportation provisions.

36.   The parties shall complete the Parenting Partnership program, as detailed in a separate Order.

37.   Mother shall pay the controlled expenses for the children.

38.   Pursuant to the Indiana Child Support Guidelines, Father shall pay $101.00 per week for support of the children through INSCCU or the Johnson County Clerk's office via immediate income withholding order to be prepared by Father's counsel.

39.   Father's child support arrearage is established in the amount of $9898.00. Father shall repay this amount at a rate of not less than $99.00 per week until paid in full.

40.   Father shall continue to provide health insurance for the children and shall furnish evidence of the current insurance in force periodically to Mother, no less often than on each anniversary date of the policy, supplying a "card" or other tangible evidence for use in an emergency.

41.   The Parties will divide any and all uninsured health, dental, eye, hospitalization and counseling expenses incurred by the children as follows: Mother shall pay the first $1775.00 per year of the children's uninsured medical expenses, after which Father shall pay 56% and Mother shall pay 44% of any additional uninsured medical expenses incurred each year. On all

uninsured medical expenses, if Father advances the cost, he is to provide a receipt to Mother, and she will pay him what she owes him within 30 days. If Mother advances the cost, she is to provide a receipt to Father, and he will pay her what he owes her within 30 days.

42.     Notwithstanding the above, Father shall pay 100% of the cost of T.K.'s braces, because he authorized that treatment without consulting Mother and she therefore had no input on that decision.

43.     Each party shall deposit $25.00 per month into each child's lunch account at the child's school for any month that school is in session. This obligation is suspended for both parties any month that the account has a balance of $50.00 or greater on the first day of the month.

44.     Beginning January 1, 2017, Mother shall pay all extra-curricular expenses for T.K. up to $1,000.00 annually. Father shall pay all extra-curricular expenses for N.K. and T.J.K. combined up to $1,000.00 annually. These expenses shall include entry fees, club fees, membership fees, uniforms, shoes and accessories, pictures and training fees. Each party shall provide documentation to the other when he or she has paid his or her $1,000.00 threshold, including receipts. Any expenses in excess of that amount shall be shared equally by the parties.

45.     Mother shall claim T.K. as a dependent for tax purposes every year. Father shall claim N.K. as a dependent for tax purposes every year, so long as he has paid 95% of the child support owed in the year by January 31 of the following year. The parties shall alternate claiming T.J.K. for tax purposes. Mother shall have the right to claim him for even-numbered years, and Father shall have the right to claim him for odd-

numbered years, provided that he has paid 95% of the child support owed by January 31 of the following year.

46.     Father shall transfer ownership to Mother within 60 days of the Knights of Columbus insurance policies on the children. Mother shall then pay the premiums and shall keep the policies in force.

47.     Both parties shall strive to keep each other properly apprised and will share authority and responsibility for major decisions concerning the children's upbringing. When possible, the parties shall communicate via email.

* * *

49.     The parities shall discuss with each other and share decision-making authority and responsibility for major decisions affecting the welfare and upbringing of the children, with a view toward arriving at decisions which will promote the best interests of [the children].

50.     Disputes shall be resolved between themselves and neither party shall include the children in their disputes or their resolution.

51.     During the time that each party has physical custody of [the] children, he or she shall decide all routine matters concerning the children's welfare and shall be responsible for all of the ordinary daily expenses incurred by or for the benefit of the children. The parties shall cooperate with one another in establishing a mutually supportive and responsible policy regarding such routine decisions. The parties shall also use all reasonable efforts to maintain free access between themselves and the children. Each party shall be entitled to speak to the

children by telephone at reasonable times and intervals when the children are in the physical custody of the other party. There shall be an open exchange of information regarding the children's summer camps, extracurricular activities and travel away from the home of either parent; and, in case of travel away from home, the traveling parent shall provide an emergency telephone number where the parent and children can be reached.

52. The children shall continue in counseling until released by the counselor. Each party shall be responsible for transporting the children for appointments scheduled during his or her parenting time, which duty should be shared equally.

53. Mother is not in contempt regarding Father's personal belongings or the division of personal property. She is not in contempt regarding the homeowner's association dues. Mother is not in contempt regarding the water and sewer bill. Her failure to pay that bill was not contemptuous. However, she is in contempt regarding the condition of the house when she turned over possession of it to Father. As a result, Mother shall pay Father $250.00 within 30 days toward repairs.

54. The $500 award of attorney's fees ordered in favor of [Mother's counsel] against Father shall be entered as a judgment in 30 days unless Father provides the Court with a copy of the cancelled check or other proof of payment before that date.

Appellant's App. pp. 20-22. Father now appeals.[2]

---

[2] Although Father was represented by counsel before the trial court, he is proceeding pro se on appeal. This does not affect our analysis, as it is well settled that pro se litigants are held to the same standard as are licensed attorneys. *Goossens v. Goossens*, 829 N.E.2d 36, 43 (Ind. Ct. App. 2005).

# Standard of Review

[12] We give considerable deference to the findings of the trial court in family law matters. *In re Marriage of Duckworth*, 989 N.E.2d 352, 354 (Ind. Ct. App. 2013) (citing *MacLafferty v. MacLafferty*, 829 N.E.2d 938, 940 (Ind. 2005). This deferential standard of review recognizes that the trial court "is in the best position to judge the facts, to get a feel for the family dynamics, to get a sense of the parents and their relationship with their children—the kind of qualities that appellate courts would be in a difficult position to assess." *Id*. (quoting *MacLafferty*, 829 N.E.2d at 940). Appellate decisions that modify the trial court's decision are especially disruptive in the family law setting. *Id*.

[13] When reviewing issues of child support,

> [w]e begin with the understanding that support calculations are made utilizing the income shares model set forth in the Indiana Child Support Guidelines (the Guidelines). The Guidelines apportion the cost of supporting children between the parents according to their means. This approach is based on the premise that children should receive the same portion of parental income after a dissolution that they would have received if the family had remained intact. A calculation of child support under the Guidelines is presumed to be valid. Therefore, we will not reverse a support order [based on the Guidelines] unless the determination is clearly against the logic and effect of the facts and circumstances.

*McGill v. McGill*, 801 N.E.2d 1249, 1251 (Ind. Ct. App. 2004) (citations omitted). When reviewing a child support order, will neither reweigh the evidence or judge the credibility of witnesses. *Id*. Instead, we consider only the

evidence favorable to the trial court's judgment and reasonable inferences that can be drawn from this evidence. *Id.*

[14] We also note that the trial court here entered findings of fact and conclusions of law. In such cases, our standard of review is two-tiered: we first determine whether the evidence presented supports the trial court's factual findings; second, we determine whether the trial court's findings support the judgment. *Sexton v. Sexton*, 970 N.E.2d 707, 710 (Ind. Ct. App. 2012). We will set aside the trial court's findings only if they are clearly erroneous, i.e., when review of the record leaves us firmly convinced that a mistake has been made. *Id.* Although we defer to a trial court's factual findings, we do not defer to its conclusions of law. *Id.* In order to reverse a trial court's ruling, it is not enough that the evidence might have supported a different conclusion. *Montgomery v. Montgomery*, 59 N.E.3d 343, 350 (Ind. Ct. App. 2016), *trans. denied*. Rather, the evidence must positively require the conclusion contended for by appellant before we may reverse. *Id.*

## Father's Failure to Request Transcript

[15] We initially observe that Father has failed to present us with a transcript[3] of the evidentiary hearing held by the trial court. In fact, Father failed to request a

---

[3] In accordance with the definition set forth in the Appellate Rules, the "transcript" includes a volume of exhibits. *See* Ind. Appellate Rule 2(K) ("Transcript shall mean the transcript or transcripts of all or part of the proceedings in the trial court or Administrative Agency that any party has designated for inclusion in the Record on Appeal *and any exhibits associated therewith.*") (emphasis added)). Here, Father has provided us with neither the transcript of the hearing nor the exhibits, other than to include some exhibits in his appendix.

transcript in his notice of appeal. The relevant portion of Indiana Appellate Rule 9 provides that a notice of appeal shall include

> [a] designation of all portions of the Transcript necessary to present fairly and decide the issues on appeal. If the appellant intends to urge on appeal that a finding of fact or conclusion thereon is unsupported by the evidence or is contrary to the evidence, the Notice of Appeal *shall* request a Transcript of all the evidence.

Ind. Appellate Rule 9(F)(5) (emphasis added).

[16] Although not fatal to the appeal, an appellant's failure to present a transcript to the court on appeal acts as a waiver of any claim of error which depends on the evidence presented at a hearing. *Lifeline Youth & Family Servs., Inc. v. Installed Bldg. Products, Inc.*, 996 N.E.2d 808, 814 (Ind. Ct. App. 2013) (citing *In re Walker,* 665 N.E.2d 586, 588 (Ind. 1996)); *Ostrowski v. Everest Healthcare Ind., Inc.*, 956 N.E.2d 1144, 1147-1148 (Ind. Ct. App. 2011) (holding that defendant waived challenge to trial court's jury instructions by failing to include relevant portions of eight-day trial in fifty-six page transcript submitted to court on appeal); *Fields v. Conforti*, 868 N.E.2d 507, 511 (Ind. Ct. App. 2007) (holding that defendant waived any arguments that depended on the evidence at trial by failing to request a transcript of the bench trial); *see also Pabey v. Pastrick*, 816 N.E.2d 1138, 1141-1142 (Ind. 2004) (declining to dismiss appellant's appeal for failure to include a transcript of the trial because the appellant did not argue that the trial court's findings were unsupported by the evidence and his argument relied on the trial court's factual findings). Accordingly, to the extent

that Father's arguments on appeal require us to consider the evidence presented at the hearing, they are waived.

## I. Trial Court's Calculation of Father's Income

[17] Father first argues that the trial court abused its discretion by calculating his income, for purposes of determining child support, based upon evidence presented by Mother. Specifically, he claims that Mother's evidence overstated his income received from his employment at Indiana University. Father's income from Indiana University rose slowly from 2013 to 2015, going from $70,557 in 2013 to $71,893 in 2015. The trial court accepted Mother's evidence that Father's income from Indiana University rose more dramatically in 2016, to $79,762, or $1,533.88 per week. Father claims that this amount is in conflict with the 2016 W-2 income withholding form he received from Indiana University for 2016, which shows that Father received $73,002.64 in wages and other compensation. Appellant's App. p. 29. Thus, Father argues that the trial court over-calculated his income from Indiana University by $6,759.36.

[18] Father's argument requires us to consider the evidence presented at the hearing, including the testimonial evidence, but Father has failed to provide us with a transcript of this hearing or all the evidentiary exhibits admitted at the hearing. Thus, we cannot adequately address Father's argument based upon the record presented to us. *See In re Walker,* 665 N.E.2d at 588.

[19] Moreover, Father's argument is little more than a claim that the trial court calculated his income based on evidence presented by Mother and ignored his

evidence indicating that his income was lower. It is for the trial court, acting as the finder of fact, to determine what weight and credit to give to Mother's evidence. *McGill*, 801 N.E.2d at 1251. Father's argument on appeal is little more than a request that we consider the evidence he presented and find it more worthy of credit than did the trial court. This is not our role as an appellate tribunal. *Id.*

[20] We reach a similar result with regard to Father's argument that the trial court erred in calculating the income Father earned from his independent consultation business. Father admits that his business income for 2015 was $5,470, the figure the trial court used. However, he claims that his income from this business is irregular and that his main client terminated his consulting contract. Again, however, this argument requires us to consider evidence that is not favorable to the trial court's decision and reweigh the evidence. It would also require us to consider the evidence and testimony presented at the hearing, which is not contained in the record presented to us.

## II. Mother's Calculation of Mother's Income

[21] Father also argues that the trial court miscalculated Mother's income. He notes that the trial court calculated Mother's gross income by including her actual gross income from her employment plus the amount she received in long-term disability insurance benefits, for a total gross weekly income of $1,308.05. Father claims that Mother's disability insurance benefit income is not taxed. He therefore claims that this income is more akin to net income and that the trial

court should therefore have considered only his post-tax net income when calculating his child support obligation. We disagree.

[22] Father's argument would again require us to review the evidence presented at the hearing, but, as noted above, he has failed to include the transcript and all the exhibits in the record before us. Moreover, Father's argument is contrary to the plain language of the Child Support Guidelines, which explicitly define the term "gross weekly income" to include "income from salaries, wages, commissions, bonuses, overtime, partnership distributions, dividends, severance pay, pensions, interest, trust income, annuities, capital gains, social security benefits, workmen's compensation benefits, unemployment insurance benefits, *disability insurance benefits*, gifts, inheritance, prizes, and alimony or maintenance received." Ind. Child Support Guideline 3(A)(1) (emphasis added). Indeed, in promulgating the Child Support Guidelines, our supreme court rejected the use of net income. *See* Child Supp. G. 1, commentary ("Gross Versus Net Income. One of the policy decisions made by the Judicial Administration Committee in the early stages of developing the Guidelines was to use a gross income approach as opposed to a net income approach."). Accordingly, the trial court properly included Mother's disability insurance benefits when calculating Mother's gross income.

### III. Consideration of Wishes of the Children

[23] Father next asserts that the trial court erred by failing to take into consideration the wishes of the children when determining the issue of child custody and parenting time. Father notes that, per the controlling statute, there is no

presumption in favor of either parent. Ind. Code § 31-17-2-8. Pursuant to this statute, when determining custody issues in a dissolution case, "the trial court shall consider all relevant factors, including the following: . . . [t]he wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age." *Id*. at § 8(3).

[24] Father claims that the trial court failed to consider the wishes of the children, noting that the trial court denied his request that the trial court conduct an in camera interview of the children. Father, however, makes no claim that he was unable to call his children as witnesses at the hearing. Again, Father has failed to provide us with a transcript of the hearing. Thus, based on the record before us, we cannot say that the trial court erred by failing to consider the wishes of the children.[4]

## IV. Determination of Father's Arrearage

Father also argues that the trial court erred in determining his child support arrearage. Father contends that the trial court erred in calculating his child support arrearage retroactively to January 1, 2015. Father notes that we have

---

[4] Father claims, apparently based on his own personal interactions with his son N.K., that N.K. wishes to spend more time with Father and desires to speak to "the judge" deciding the appeal. Appellant's Br. at 12. Father goes so far as to suggest that this court conduct an in camera interview with N.K. in order to determine his wishes. This claim, like many of Father's other arguments, appears to fundamentally misunderstand our role as an appellate court. We are not a court of first instance able to accept new evidence. *See Merrillville 2548, Inc. v. BMO Harris Bank N.A.*, 39 N.E.3d 382, 390 (Ind. Ct. App. 2015) (noting rule that this court may not consider material that is not properly part of the record on appeal)*, trans. denied*. Nor do we reweigh evidence or determine issues of credibility. *Montgomery v. Montgomery*, 59 N.E.3d 343, 350 (Ind. Ct. App. 2016), *trans. denied.* Instead, we are an appellate court that considers only the evidence favorable to the trial court's decision. *Id*.

previously held that an initial child support order can be retroactive to the date of the petition for dissolution. *Mitten v. Mitten*, 44 N.E.3d 695, 705 (Ind. Ct. App. 2015) (citing *Boone v. Boone*, 924 N.E.2d 649, 652 (Ind. Ct. App. 2010)). However, the trial court has no power to issue orders pertaining to support that that occurred prior to the filing of the petition for dissolution. *Id.* at 654.

[25] Here, Mother filed her petition for dissolution on April 30, 2014. Thus, the trial court had authority to order Father to pay support retroactive to a date no earlier than April 30, 2014. Father claims that the trial court's arrearage determination improperly included unpaid child support beginning in January 1, 2015. Appellant's Br. at 14. However, January 1, *2015* is well after the April 30, *2014* date on which Mother filed her petition for dissolution. The trial court would have been within its authority to order Father to pay support retroactive to the date the petition for dissolution was filed.[5] Father's argument that the trial court erred by calculating his child support arrearage by including child support retroactive to January 1, 2015 is therefore meritless.

[26] Father also claims that the trial court erred in ordering him to pay child support retroactive to January 1, 2015, because he contributed to the support of the children in a litany of other ways. In support of his argument, Father refers to items in his appendix that do not appear to have been introduced into evidence at the evidentiary hearing. We may not consider items outside the record on

---

[5] Father claims that January 1, 2015 is an arbitrary date chosen by Mother's counsel. However, this ignores the trial court's factual finding that Father helped Mother with the children's expenses until January 1, 2015, after which he stopped contributing money to a joint bank account.

appeal. *Merrillville 2548, Inc. v. BMO Harris Bank N.A.*, 39 N.E.3d 382, 390 (Ind. Ct. App. 2015), *trans. denied*. We are unable to determine whether these items were properly admitted at the hearing because Father has not provided us with a transcript of the hearing or a volume of the exhibits admitted at the hearing. We therefore consider this argument to be waived. *Lifeline Youth & Family Servs.*, 996 N.E.2d at 814 (citing *In re Walker*, 665 N.E.2d at 588).

## V. Failure to Hold Mother in Contempt

[27] Lastly, Father argues that the trial court erred by failing to find Mother in contempt. More precisely, the trial court found that Mother was not in contempt regarding Father's claims that she had taken his personal items, failed to pay the homeowner's association dues, and failed to pay the water and sewer utility bills. The trial court did, however, find Mother in contempt with regard to the condition of the marital home when she turned over possession of the home to Father. Father argues that Mother should have been held in contempt on these other matters as well.

[28] Our supreme court has recently emphasized that trial courts are given great deference in contempt actions. *Steele-Giri v. Steele*, 51 N.E.3d 119, 129 (Ind. 2016). Evaluation of the person's state of mind, i.e., whether the allegedly contemptuous conduct was done willfully, is crucial to the determination of contempt. *Id*. The trial court is in the best position to weigh and assess credibility of the person alleged to be in contempt. *Id*.

Here, the trial court exercised its discretion by declining to find Mother in contempt. The trial court was in the best position to determine Mother's state of mind. Because Father has failed to provide us with a transcript, we have no means of adequately reviewing Father's claims to the contrary. Accordingly, we cannot say that the trial court erred in this matter.

## Conclusion

Father has seriously impeded our review of his claims by failing to provide us with a transcript of the evidentiary hearing held by the trial court. Still, we have endeavored to address Father's claims to the extent that we can based upon the record before us. However, Father has not established that the trial court abused its considerable discretion in this case. That is, Father has failed to show that the trial court abused its discretion in calculating his or Mother's income for purposes of determining his child support obligation. Nor has he shown that the trial court abused its discretion by failing to hold an *in camera* interview of the children to determine their wishes with regard to child custody and parenting time. Father's argument that the trial court erred by ordering his child support obligation to include support retroactive to January 1, 2015 is meritless, as this date is well after the date Mother filed her petition for dissolution. Lastly, Father has not shown that the trial court abused its discretion by failing to hold Mother in contempt on each of the issues Father raised at trial.

Affirmed.

Kirsch, J., and Altice, J., concur.