

ATTORNEY FOR APPELLANT

Dominic W. Glover
Columbus, Indiana

ATTORNEY FOR APPELLEE

William S. Frankel, IV
Wilkinson, Goeller, Modesitt,
Wilkinson & Drummy, LLP
Terre Haute, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Bryan E. Mitten,

*Appellant-Petitioner,*

v.

Cynthia L. Mitten,

*Appellee-Respondent.*

September 14, 2015

Court of Appeals Case No.
11A01-1501-DR-8

Appeal from the
Clay Superior Court

The Honorable J. Blaine Akers,
Judge

Trial Court Cause No.
11D01-1307-DR-400

**Kirsch, Judge.**

Bryan E. Mitten ("Father") appeals the trial court's decree of dissolution ("Decree") that dissolved his marriage to Cynthia L. Mitten ("Mother"), raising five issues that we consolidate and restate as:

> I. Whether the trial court's determination of Father's child support obligation was an abuse of discretion; and

II.  Whether the trial court abused its discretion in its division of the parties' debts.

[2] We affirm.

## Facts and Procedural History

[3] Father and Mother were married in June 2005,[1] and, during the marriage, Father adopted Mother's biological child ("Child"), born in June 2000. On July 16, 2013, Father petitioned for dissolution of their marriage. On or near the time of filing, Father moved out of the marital residence, and Mother continued to reside in the home with Child. No provisional hearing was requested or held, but during the pendency of the action, Father paid $6,655.87 toward the mortgage on the marital residence, as well as utilities and property taxes on it.

[4] At the March 4, 2014 final hearing, the parties stipulated to the trial court that Mother would have primary physical custody of Child, and Father would be entitled to overnight visitation with Child in accordance with Parenting Time Guidelines. The parties also submitted lists of personal property that each would retain, including each party taking his or her vehicle and the associated

---

[1] Although the trial court's Decree of Dissolution states that the parties married on June 14, 2006, *Appellant's App*. at 11, both parties indicate that they were married on June 17, 2005. *Appellant's Br*. at 3; *Appellee's Br*. at 3.

debt. *Tr.* at 5. Because Father's debt on his truck was greater, the parties agreed that Father would retain his 401(k) pension. *Id.* at 6.

[5] At the hearing, the parties testified to their respective incomes. Mother testified that, during the marriage, Father lost his job and the available health insurance for Child, so she left her job and took another that offered health insurance. *Id.* at 54. She testified that she paid $88.52 per week for Child's health, dental, and vision coverage. With regard to visitation, Mother testified that Father exercised very little parenting time with Child, who was in eighth grade at the time of the hearing. She observed that Child did not desire to exercise visitation with Father, stating that Child's diagnosed ADHD condition contributed to Child having difficulty with transitions, but that "in time" she believed visitation and relationship with Father would improve. *Id.* at 49. She testified that she was in favor of Father and Child having a relationship and that she encouraged phone calls and visitation. Father's testimony acknowledged that Child did not desire to exercise visitation, but Father testified that, out of concern that it might exacerbate Child's ADHD conditions, Father intentionally had not "pushed" Child to stay with him. *Id.* at 27. Between the parties' separation in June 2013 and the final hearing in March 2014, Father had not exercised any overnight visitation.

[6] The trial court issued findings and conclusions that calculated child support in the amount of $235.00 per week. The trial court's child support calculation credited Mother with paying $88.52 per week in health insurance premiums for

Child.  With regard to Father's visitation and any credit for overnight visitation, the trial court stated,

> The Court finds the parties agreed [Father's] parenting time would be pursuant to the Indiana Parenting Time Guidelines. There was testimony that [Father] has not had any overnight parenting time with the minor child since the separation of the parties, or that overnight parenting times were minimal.  In calculating child support, the Court has taken this testimony into account, even though the parties have agreed parenting time with the child is to be in accordance with the Indiana Parenting Time Guidelines. *[Note: Should [Father] in the future, actually have parenting time overnights with the child, i.e. every other weekend, then the Court would entertain a[] jointly filed modification agreement or motion by [Father] to modify child support.]*

*Appellant's App*. at 12 (emphasis in original).  The trial court ordered that the $235.00 per week support obligation was retroactive to the first Friday following the date the petition was filed, which resulted in an arrearage of $13,360.00.  However, the Decree applied a credit of $2,216.40 against that arrearage; the credit represented 33.3% of the payments that Father voluntarily made during the pendency of the matter toward the mortgage and utilities on the marital residence.

[7] The trial court determined that "neither party has rebutted the presumption" of equal division of the marital estate.  *Id*. at 23.  In dividing property, the Decree recognized that the parties had agreed to division of certain assets and debts, including that associated with their respective vehicles and other miscellaneous items of personal property, which the court did not expressly value because the

parties had not provided values to the court. As is relevant to this appeal, Mother received in the property division, the net proceeds of the sale of the marital residence, which were $1,724.30, and Father received his 401(k). The trial court ordered Father to pay the following debts: (1) $6,836.99 One Main Debt; (2) $1,912.19 Fifth Third credit card; and (3) $4,117.39 Capital One credit card. It ordered the parties to split equally the following debts: (1) $1,000.00 loan repayment to Mother's mother; (2) approximately $3,533.00 in bills to St. Vincent Hospital; and (3) $346.00 to Northside Anesthesia.

[8] Father filed a Motion to Reconsider or In the Alternative Motion to Correct Errors, asserting that the trial court erred in the following respects: (1) in its division of debts; (2) in making the child support obligation retroactive to the date of filing; (3) in giving Mother a credit of $88.52 per week for health insurance costs; (4) in failing to give Father credit for overnight visitations; and (5) in crediting Father $2,216.40 toward his support arrearage obligation, which represented 33.3% of the total amounts he paid during the pendency of the action. Following a hearing, the trial court determined it had committed error in its prior finding that neither party had rebutted the presumptive equal division of the marital estate, stating, "[A]n equal division is not just and reasonable in light of [Mother's] contribution [to the acquisition of the marital home] . . . and that [Mother] did rebut the presumption of equal division." *Id.* at 49. The trial court did not, however, modify its prior support order or its division of assets and debts, thereby denying Father's requests. Father now appeals.

# Discussion and Decision

[9] The trial court's decision on a motion to correct error comes to an appellate court cloaked in a presumption of correctness. *Page v. Page*, 849 N.E.2d 769, 771 (Ind. Ct. App. 2006). We review the denial of a motion to correct error for an abuse of discretion. *Lovold v. Ellis*, 988 N.E.2d 1144, 1149-50 (Ind. Ct. App. 2013). An abuse of discretion occurs when a trial court's decision is against the logic and effect of the facts and circumstances before the court or if the court has misinterpreted the law. *Id.* at 1150. When reviewing a decision for an abuse of discretion, we consider only the evidence and reasonable inferences favorable to the judgment. *Id.*

[10] Where, as here, the trial court issues specific findings of fact and conclusions thereon, we apply a two-tiered standard of review. Without reweighing the evidence or assessing the credibility of witnesses, we must determine, first, whether the evidence supports the findings, and second, whether the findings support the judgment. Ind. Trial Rule 52(A); *Tompa v. Tompa,* 867 N.E.2d 158, 163 (Ind. Ct. App. 2007). Findings are clearly erroneous if there are no facts in the record to support them either directly or by inference, and a judgment is clearly erroneous if the wrong legal standard is applied to properly found facts. *Birkhimer v. Birkhimer,* 981 N.E.2d 111, 118 (Ind. Ct. App. 2012). "In order to determine that a finding or conclusion is clearly erroneous, our review of the evidence must leave us with the firm conviction that a mistake has been made." *Leonard v. Leonard,* 877 N.E.2d 896, 900 (Ind. Ct. App. 2007). We consider

only the evidence favorable to the trial court's judgment. *Turner v. Turner*, 785 N.E.2d 259, 263 (Ind. Ct. App. 2003).

# I. Child Support Calculation

[11] A trial court's calculation of child support is presumptively valid. *Bogner v. Bogner*, 29 N.E.3d 733, 738 (Ind. 2015). We review decisions regarding child support for an abuse of discretion. *Lovold*, 988 N.E.2d at 1149-50. An abuse of discretion occurs when a trial court's decision is against the logic and effect of the facts and circumstances before the court or if the court has misinterpreted the law. *Id.* at 1150. When reviewing a decision for an abuse of discretion, we consider only the evidence and reasonable inferences favorable to the judgment. *Id.*

### A. Mother's Credit for Health Insurance Premiums

[12] Father argues that the trial court erred when, in calculating child support, it credited Mother with paying $88.52 per week in health insurance premiums for Child. Indiana's Child Support Guidelines direct that "[t]he weekly cost of health insurance premiums for the child(ren) should be added to the basic obligation whenever either parent actually incurs the premium expense or a portion of such expense." Ind. Child Supp. G. 3(E)(2). The commentary to this Guideline explains that this is accomplished by giving a credit to the parent who actually pays the cost. Child Supp. G. 3(E)(2), cmt.; *see also Johnson v. Johnson*, 999 N.E.2d 56, 59 (Ind. 2013). The Guidelines also provide for a worksheet adjustment for the weekly cost of health insurance premiums.

Guideline 3(G)(3) provides, "The parent who pays the weekly premium cost for the child(ren)'s health insurance should receive a credit towards his or her child support obligation in most circumstances."

[13] Here, in calculating child support, the trial court credited Mother with $88.52 per week that she pays in health insurance costs for Child. With regard to the issue of the health insurance costs, the trial court's order on Father's motion to correct error explained and found:

> Given the weight of all evidence, the Court finds, at this time, the $88.50 insurance cost, attributed to the child support obligation worksheet, to be reasonable insurance costs; however, the Court does enter an order finding a _deviation_ for the child support guidelines for the reason the only testimony before the Court is that these are the actual medical insurance costs _incurred by [Mother] that are attributable to the minor child_.

*Appellant's App*. at 40 (emphasis in original).

[14] Father's argument is that the $88.52 amount exceeds "a reasonable cost" as defined by Guideline 7 of the Indiana Child Support Guidelines, which provides, in part:

> The court shall order one or both parents to provide private health care insurance when accessible to the child at a reasonable cost.
> . . . .
> **Reasonable cost.** The cost of private health insurance for child(ren) is considered reasonable, if it does not exceed five percent (5%) of the Weekly Gross Income of the parent obligated to provide medical support. The cost of private health insurance

for the child(ren) is not considered reasonable when it is combined with that party's share of the total child support obligation (Line 4 of the Worksheet) and that sum exceeds fifty percent (50%) of the gross income of the parent responsible for providing medical support.

A consideration of the foregoing factors is addressed in the Health Insurance Premium Worksheet (HIPW), which should be utilized in determining the appropriate adjustments for the child(ren)'s health insurance on the Child Support Obligation Worksheet.

Child Supp. G. 7. Commentary to Guideline 7 further discusses health insurance premium costs:

**Health Insurance Premiums.**

The court is federally mandated to order accessible private health care insurance if the cost is at or below 5% of the Weekly Gross Income of a parent as indicated in the Child Support Obligation Worksheet. *If above 5% of Weekly Gross Income, the court has discretion to require the health insurance premium be paid by a parent if the court indicates the reason for the deviation.*

Child Supp. G. 7, cmt. (emphasis added). Father argues that Mother's weekly gross income was determined to be $794.05, and that the "reasonable cost" of health insurance is 5% of that figure. Thus, he argues, "At most the trial court should have limited the cost to $39.70 per week which is 5% of Mother's Weekly Gross Income as found by the Court." *Appellant's Br.* at 7. Upon review, we find no abuse of discretion for several reasons.

[15] Initially, we observe that Guideline 7 provides that the "court *shall order* one or both parents *to provide private health care insurance* when accessible to the child at a reasonable cost." Child Supp. G. 7 (emphasis added). Here, the trial court is not ordering a parent to provide the health insurance; rather, Mother is voluntarily paying the health care costs. However, assuming without deciding that application of the reasonableness tests of Guideline 7 is nevertheless warranted, we observe that the commentary to Guideline 7, while providing instruction regarding completion of the HIPW, sheds light on the "reasonableness" inquiry, discussing that there are two tests:

> Section Three: Determination of Whether Premium is Reasonable in Cost.
>
> There are two tests to determine if the cost of the health insurance premium is reasonable to a parent. Both tests must be satisfied for the cost to be reasonable. The first test determines whether the health insurance premium cost exceeds five percent (5%) of the parent's Weekly Gross Income. The second test determines whether the parent's portion of the child support obligation plus the health insurance premium cost exceeds fifty percent (50%) of the parent's Weekly Gross Income.

Child Supp. G. 7, cmt. Here, the second test outlined in Guideline 7, concerning "whether the parent's portion of the child support obligation plus the health insurance premium cost exceeds fifty percent (50%) of the parent's Weekly Gross Income" does not yield a result indicating the $88.52 is unreasonable. That is, the $88.52 added to Mother's portion of the total weekly

child support obligation does not result in a figure above 50% of her weekly gross income.[2]

[16] In any event, even if the $88.52 were deemed "unreasonable," the commentary to Guideline 7 provides, "If above 5% of Weekly Gross Income, the court has discretion to require the health insurance premium be paid by a parent if the court indicates the reason for the deviation." In this case, the trial court expressly recognized "a *deviation* . . . for the reason [that] the only testimony before the Court is that these are the actual medical costs *incurred by [Mother]*[.]" *Appellant's App*. at 40 (emphasis in original). Additionally, the commentary to Guideline 7, while giving direction on how to complete Section Five of the HIPW, similarly recognizes trial court discretion in the matter of health insurance, stating:

> Mark the parent or parents who are ordered to provide health insurance. If both parents are ordered, mark both boxes. Enter the amount from Line D in the box next to the parent(s) who are ordered to provide the insurance, and indicate the "Total Ordered." *Please note that the court may use its discretion to order or not order health insurance coverage even when all tests are met or not met.*

Child Supp. G. 7, cmt. (emphasis added). Indeed, our Supreme Court has directed that the "'Guidelines are not immutable, black letter law, but provide

---

[2] Mother's portion of the weekly child support obligation was $99.14. *Appellant's App*. at 27. Adding the $88.52 health insurance cost to Mother's $99.14 portion of the weekly child support obligation equals $187.66, which is less than 50% of Mother's $791.05 weekly gross income figure.

'room for flexibility.'" *Bogner*, 29 N.E.2d at 739 (citing Child Supp. G. 1, cmt.; *Garrod v. Garrod*, 655 N.E.2d 336, 338 (Ind. 1995)). We thus find that the Guidelines extend great deference to trial courts, including in assigning responsibility for maintaining health insurance costs and crediting a parent for payment of it.

[17] Turning to the record before us, the undisputed evidence is that Mother pays $88.52 every week. Child has been diagnosed with ADHD, and he is actively being treated for it, taking "top tier" daily medications and attending doctor visits every few months. *Tr.* at 56. Father has not indicated that he can or will provide insurance or that any equivalent insurance is available at a lesser weekly cost. Even if other, less expensive insurance were available to Mother or Father, it would need to be determined if this would increase any deductible and/or reduce benefits. Based on the language of the Guidelines and the accompanying commentary, we believe that Guideline 7 is not intended to prevent parties from maintaining health insurance for minor children, even if that exceeds what is considered "reasonable" under the two tests outlined in Guideline 7. It is a matter left to the trial court's discretion, and we find no abuse of discretion here in the trial court's decision to credit Mother with $88.52 per week in health care costs.

### B. Credit for Overnight Visitation

[18] Father argues that the trial court abused its discretion in its child support calculation by not giving Father more credit for overnight parenting time. Our Supreme Court has held:

> The Guidelines currently provide that "[a] credit *should* be awarded for the number of overnights each year that the child(ren) spend with the noncustodial parent." Ind. Child Supp. G. 6 (emphasis added). This credit is awarded out of recognition that "overnight visits with the noncustodial parent *may* alter some of the financial burden of the custodial and noncustodial parents in caring for the children." Although the prior language under the Guidelines stated that the trial court "*may* grant the noncustodial parent a credit," we continue to hold that the trial court is not required to award parenting time credit based upon overnights. Ind. Child Supp. G. 3(F)(4) (emphasis added); Ind. Child Supp. G. 6.

*Bogner*, 29 N.E.3d at 743 (internal case citations omitted). The *Bogner* Court further explained, "Given the indefinite nature of when an overnight truly shifts the financial burden from one parent to the other, we cannot conclude that the parenting time credit is mandatory." *Id.*

[19] Here, with regard to credit for overnight visitation, the trial court concluded:

> The rationale behind the parenting time credit is that overnight visits with the noncustodial parent may alter some of the financial burden of the custodial and noncustodial parents in caring for the children. *Young v. Young*, 891 N.E.2d 1045 (Ind. 2008). Here, the Court finds that [Father] has demonstrated a pattern of minimal overnight visits with [Child] and, based upon evidence the Court considers relevant, the Child support Obligation Worksheet will credit [Father] with 0-51 overnights annually.

*Appellant's App.* at 20-21 (Conclusion of Law I). Father argues that crediting Father with 0-51 overnights was an abuse of discretion because the parties stipulated at the March 2014 final hearing that Father was entitled to parenting

time pursuant to Indiana's Parenting Time Guidelines, which includes 98 overnights.

[20] The trial court did not fail to recognize that the parties had agreed that Father would be entitled to exercise visitation pursuant to the Parenting Time Guidelines, as Father's argument suggests. Indeed, the trial court's Findings expressly acknowledged that the parties had so agreed, but it determined that the testimony at the final hearing reflected Father had exercised minimal overnight visitation with Child, if any, since the parties separated. *Id*. at 12 (Finding of Fact No. 4). Our review of the record reveals that, Father testified at trial that he had "spent very little time with [Child]. He doesn't want to see me." *Tr*. at 14. Father continued to explain, "[H]e's busy. He doesn't want to go." *Id*. Father indicated that he spoke to Child on the phone "most weekends," but the last time Father had seen Child before the March 2014 final hearing, was on the prior Christmas Eve.[3] *Id*. at 15, 26-27. With regard to overnight visitations, Father reported that Child had not exercised an overnight visitation "since I've moved out of the house," explaining, "'Cause he does not want to stay with me." *Id*. at 15, 26.

[21] Father expressed that Child's ADHD may be a contributing factor to problems with the exercise of visitation, stating that the ADHD is "one of the reasons I haven't pushed him staying with me and such. Because I don't want him to get

---

[3] At the time of the final hearing, Child was in the eighth grade.

all upset." *Id*. at 27. In Mother's testimony, she likewise stated that "With ADHD . . . They don't like change at all" and that Child "does not deal with change very well." *Id*. at 49. Mother further testified regarding visitation:

> So I think, in time, I think . . . [Father's] doing what he needs to do as far as the phone calls. I just think it's going to take [Child] a little bit more time than normal. But I . . . fully support [Father] seeing [Child.]

*Id*. at 49.

[22] Father testified that it was his desire to exercise visitation with Child, and he requested at trial that he receive credit for 98 overnight visitations, pursuant to the Parenting Time Guidelines. Father continued that, even if Child did not exercise the overnights, he nevertheless believed he should receive credit for 98 overnight visitations because, given that Father was being considerate in not wanting to force visitation and upset Child, "why should I be penalized for . . . thinking about his welfare." *Id*. at 28.

[23] Concerning overnight visitations, the trial court found,

> There was testimony that [Father] has not had overnight parenting time with the minor child since the separation of the parties, or that overnight parenting times were minimal. In calculating child support, the Court has taken this testimony into account, even though the parties have agreed parenting time with the child is to be in accordance with the Indiana Parenting Time Guidelines. *[Note: Should [Father] in the future, actually have parenting time overnights with the child, i.e. every other weekend, then the Court would entertain a[] jointly filed modification agreement or motion by [Father] to modify child support.]*

*Id.* at 12 (Finding of Fact 4) (emphasis in original).

[24] Our review of the record reveals that the trial court's findings concerning overnight visitation were supported by the evidence at trial, and that the trial court's findings support its conclusions. Father has failed to establish that the trial court abused its discretion when it decided to credit Father with 0-51 overnights annually.

### C. Credit to Father for Payments During Pendency

[25] In its decree, the trial court applied a credit toward Father's retroactive child support obligation in an amount equal to 33.3% of what Father voluntarily paid in mortgage and utility payments after the parties separated and throughout the pendency of the dissolution action. Father contends that the trial court failed to properly credit him and thereby abused its discretion.

[26] The trial court's findings referred to Father's testimony that he paid $6,655.87 toward Mother's "living expenses <u>and</u> the support of the minor child" between the date of separation and the final hearing. *Appellant's App.* at 13 (Finding of Fact 7). The trial court's findings also referred to Mother's testimony that Father had not paid any child support directly to her and that she had paid all expenses associated with Child, but that Father had made payments on the mortgage and utilities on the marital residence, where Mother and Child were residing, during the pendency of the action. The trial court found:

> The Court finds that [Father]'s payments of these specific expenses are both in the form of *temporary maintenance to [Mother],*

> *and*, in part, *are in the form of child support for the benefit of the child.*
> The Court, below, will determine the allocation of temporary
> maintenance to [Mother] and the allocation of child support to
> for the minor child.

*Id.* at 15 (Finding of Fact 11) (emphasis in original).  Thereafter, the trial court concluded, in relevant part:

> Payments made by [Father] for the mortgage, REMC, and
> homeowners insurance was largely for the purpose of preserving
> the marital residence and is considered by this Court to be both a
> form of temporary spousal maintenance and, in part, child
> support for the minor child.  The Court, having considered all
> relevant testimony, allocates 33.3% of the payments made . . . to
> be child support.  Therefore, the Court determines $2,216.40
> shall be allocated as child support paid during the pendency of
> this action.  Additionally, 33.3% of marital residence mortgage
> and utility payments made by [Father] **since the final hearing** are
> also considered child support.

*Id.* at 20 (Conclusion of Law H) (emphasis in original).  Father argues on appeal that he should receive "a dollar-for-dollar credit," *Appellant's Br.* at 13, although he argued in his motion to correct error that he should have been credited with something more than 33.3%, suggesting 50% would be an equitable figure.  Either claim is asking us to find an abuse of discretion occurred; upon review, we find no such error.

[27]  In support of his position that he should receive "dollar-for-dollar" credit for all the payments he made, Father cites to *R.R.F. v. L.L.F.*, 935 N.E.2d 243 (Ind. Ct. App. 2010).  There, during a three-month period of time that no support

order was in place, the father paid for the eighteen-year-old child's car insurance, health insurance, and cell phone, and he bought the child a laptop required for college. The trial court found that these constituted "non-conforming payments" and were gratuitous or voluntary contributions, and the trial court did not give father credit toward his child support obligation.[4] *Id*. at 247. The father appealed, and this court reversed, concluding that the father should have received credit against his child support obligation for the payments he made because the father was supporting the child "in much the same way that he would have had the child support order been in place." *Id*. at 252. In contrast to the payments made in *R.F.F.*, here, Father's payments toward mortgage and utility bills were not solely for Child's use and benefit, and we find that *R.F.F.* is not determinative of the facts before us.

[28] The trial court's decision to apply 33.3% of what Father paid in mortgage and utility payments toward Father's owed child support obligation was an exercise of judgment and discretion. While Father urges that he was entitled to receive more credit toward his obligation, he has not shown that it was against the logic and effect of the circumstances before it for the trial court to determine that

---

[4] The *R.F.F.* trial court cited to *Olson v. Olson*, 445 N.E.2d 1386, 1389 (Ind. Ct. App. 1983) and *In re Baker*, 550 N.E.2d 82, 87 (Ind. Ct. App. 1999) for the proposition that non-conforming child support payments are generally considered gratuitous and should not be considered a prepayment of a support obligation or credited against arrearages, except under three narrow exceptions. *R.F.F. v. L.L.F.*, 935 N.E.2d 243, 247 (Ind. Ct. App. 2010).

33.3% was a proper percentage to allocate toward support payments. We find no trial court error.

### D. Retroactive Child Support

[29] The trial court ordered that Father's child support obligation was retroactive to the first Friday following the filing of the petition for dissolution. Father argues that this was an abuse of discretion because, during the pendency of the action, Mother did not seek provisional relief. That is, he suggests that because she did not ask for child support, she must have been satisfied with the money that Father was providing by way of mortgage and utility payments.

[30] In support of his position, Father cites to *Boone v. Boone*, 924 N.E.2d 649, 652 (Ind. Ct. App. 2010), where the opinion included the statement that "we must presume that [Mother] was satisfied with whatever contribution Father was making to support the child because she never engaged the courts, as was her right, to seek more than he was giving." *Id*. at 655. However, the *Boone* facts are distinguishable from those before us.

[31] There, the parties had a child together in 1998 and married later that year. In 2002, they separated. Thereafter, for a period of time, the father provided support by sending money to the mother every other week. In June 2006, the father petitioned for dissolution in Illinois, and, thereafter, the mother instituted proceedings through an Illinois Title IV-D office to obtain child support, but she did not follow through with the effort. The Illinois court dismissed the action for lack of jurisdiction because the mother lived in Indiana, and Father filed a

petition for dissolution in Indiana in November 2007. At the 2008 final hearing, the mother requested child support retroactive to June 2006, the approximate date that, according to the mother, she stopped receiving child support. The trial court granted her request, and the father filed a motion to correct error, which the trial court denied. The issue on appeal was whether the trial court had the authority to order the father to pay child support retroactive to a date preceding the filing of the petition for dissolution. *Id.* at 650, 652. The *Boone* court opined that "[i]n dissolution cases, the machinery of the courts engages when the dissolution petition is filed" and concluded that a trial court may not order child support retroactive to a date preceding the filing of a petition for dissolution. *Id.* at 654-55. While the issue and facts presented in *Boone* are distinguishable, the decision expressly recognized, "Our courts have held that an initial child support order can be retroactive to the date of the petition for dissolution." *Id.* at 652. We reject Father's claim that the trial court abused its discretion when it ordered that child support was retroactive to the first Friday following the date that Father filed his petition.

## II. Division of Debt

[32] Father argues that the trial court abused its discretion in the division of the marital estate, specifically in its division of debt. The trial court's division of marital property is highly fact sensitive. *Fobar v. Vonderahe*, 771 N.E.2d 57, 59 (Ind. 2002). It is a task within the sound discretion of the trial court, and we will reverse only for an abuse of discretion. *Love v. Love,* 10 N.E.3d 1005, 1012 (Ind. Ct. App. 2014). An abuse of discretion occurs if the trial court's decision

is clearly against the logic and effect of the facts and circumstances before the court, or if the trial court has misinterpreted the law or disregards evidence of factors listed in the controlling statute. *Id.* When we review a claim that the trial court improperly divided marital property, we will not reweigh the evidence and must consider only the evidence most favorable to the trial court's disposition of the property. *Id.* Even if the facts and reasonable inferences might allow for a different conclusion, we will not substitute our judgment for that of the trial court. *Id.*

[33] Here, in its Decree, the trial court found that the parties had agreed to the division of a number of assets and debts, and it distributed certain property accordingly, including: the parties received their respective vehicles and the debt thereon; Father was awarded his 401(k); Mother would receive any net proceeds from the sale of the home; and Father was responsible for (1) a loan to One Main Financial; (2) a Fifth Third Bank credit card in his name; and a Capital One credit card in his name. The trial court also awarded various items of personal property to each party, in accordance with the parties' agreement to divide them, although the trial court did not place a value on those items because none was provided. Finding that neither party had rebutted the presumptive equal division, it thereafter ordered each party to pay half of the following debts: (1) St. Vincent Hospital; (2) Northside Anesthesia; and (3) a loan owed to Mother's mother.

[34] In his motion to correct error, Father asked the trial court to correct error concerning the division of debt, specifically asserting that the trial court erred by

failing to allocate any portion of the following debts to Mother: One Main Financial loan, Fifth Third Bank credit card, and Capital One credit card. *Appellant's App.* at 53. His argument was that because the trial court had found that neither party had rebutted an equal division, Mother should be responsible for half the amount of each of those debts.

[35] Pursuant to Indiana Code section 31-15-7-5, an equal division of marital property is presumed to be just and reasonable. However, this presumption may be rebutted by a party who presents relevant evidence, including evidence concerning the following factors, that an equal division would not be just and reasonable:

> (1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.
>
> (2) The extent to which the property was acquired by each spouse:
>
>> (A) before the marriage; or
>> (B) through inheritance or gift.
>
> (3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of any children.
>
> (4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.
>
> (5) The earnings or earning ability of the parties as related to:

(A) a final division of property; and

(B) a final determination of the property rights of the parties.

Ind. Code § 31-15-7-5.

[36] Here, in its ruling on the motion to correct error, the trial court "admit[ted] error" when it had determined that neither party had rebutted the presumption, stating that, because Mother had contributed $20,000 to the acquisition of the marital residence, an equal division would not be just and reasonable. *Appellant's App*. at 49. The trial court did not modify its prior division of debt, however, thus leaving Father responsible for the three debts in question. Upon review, we find no error in so doing.

[37] Our review of the record reveals that Father not only agreed to take those debts, he proposed that they be allocated to him in the distribution, and that is exactly what the trial court ordered. At trial, Father's proposed distribution of the marital estate was admitted into evidence. *Ex. Vol.* at 22 (*Pet'r's Ex*. 1, Tab 6).[5] In it, Father proposed that the One Main debt, the Fifth Third credit card debt, and the Capital One credit card debt be assigned to him. *Id*.; *see also Ex. Vol*. at 7 (Father's Request for Final Orders, asking trial court distribute marital estate

---

[5] We note that Father's proposed distribution provided that the net proceeds of the sale of the marital residence be awarded to Mother, which he estimated would be $19,563.41. *Ex. Vol*. at 22 (*Pet'r's Ex*. 1). However, before the trial court issued its Decree, the house sold with a resulting net equity to Mother of $1,724.30. Father filed a Notice to Court of Sale of Residence advising the trial court of the amount of the net proceeds.

pursuant to Tab 6). While testifying, Father likewise stated that the One Main debt, in the amount of $6,836.99, was in his name alone, and he "took it over and put it in [his] name." *Tr.* at 19. He likewise agreed to take over the debts owing on the Fifth Third Bank and Capital One credit cards, which were in his sole name. *Id.* at 19-20.

[38] Father's argument appears to be that, while he did agree to take responsibility for the three debts owed to One Main, Fifth Third Bank, and Capital One, he "never agreed . . . that this was being done outside of consideration of the distribution of marital debt." *Appellant's Br.* at 14. Rather, he asserts, the trial court should have required Mother to pay half of those debts, given that the trial court's Decree found that the presumption of an equal division had not been rebutted by either party. However, the trial court, upon Father's motion to correct error, admitted error and determined that Mother had rebutted the presumption of equal division and that equal division was not just and proper.

[39] To the extent that Father's claim is that the trial court erred when it determined that an equal division was not just and reasonable in light of Mother's contribution to the acquisition of the marital home, we again find no error. Indiana Code section 31-15-7-5(1) provides that evidence as to a party's contribution to the acquisition of property may rebut the presumption that an equal division is just and reasonable. The evidence at trial was that Mother contributed "a little under twenty grand down on that house." *Tr.* at 65. Father suggests that it was against the logic and effect of the circumstances before it for the trial court to determine that an unequal distribution was proper,

but not thereafter change the debt distribution. *Appellant's Br*. at 16. However, the trial court's decision to deviate from an equal division of the marital estate was based upon a statutorily-permissible factor. As we have held, a party challenging the trial court's division of marital property must overcome a strong presumption that the court considered and complied with the applicable statute. *Love*, 10 N.E.3d at 1012-13. We will reverse the trial court's distribution decision only if no rational basis exists for the court's decision. *Id.* Finding that a rational basis exists for the trial court's decision to order that Father was responsible for the three debts at issue, either because Father agreed to it or because unequal division of the estate was appropriate, we conclude that reversal is not warranted.

[40] Affirmed.

Najam, J., and Barnes, J., concur.