## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 10 2018, 5:21 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Mark J. Roberts
Maggie L. Smith
Frost Brown Todd LLC
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

John L. Davis
Pritzke & Davis LLP
Greenfield, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jeffery Thomas Maxwell, *Appellant-Petitioner,* <br><br> v. <br><br> Shirley Sue Maxwell, *Appellee-Respondent.* | August 10, 2018 <br><br> Court of Appeals Case No. 30A01-1712-DR-2768 <br><br> Appeal from the Hancock Circuit Court <br><br> The Honorable Richard D. Culver, Judge <br><br> Trial Court Cause No. 30C01-1611-DR-1635 |

**Barnes, Senior Judge.**

# Case Summary

[1] Jeffery Maxwell ("Husband") appeals the trial court's dissolution of his marriage to Shirley Maxwell ("Wife"). We affirm in part, reverse in part, and remand.

# Issues

[2] Husband raises several issues, which we restate as:

> I.   whether the trial court committed reversible error by deviating from the presumption of an equal division of marital property without explaining the deviation;
>
> II.  whether the trial court erred by ordering that Wife receive sixty percent of Husband's gross military pension;
>
> III. whether the trial court erred when it ordered Husband to pay for Wife's vehicle in the future to transport their son;
>
> IV.  whether the trial court erred when it valued Husband's Eli Lilly pension; and
>
> V.   whether the trial court erred when it ordered Husband to pay rehabilitative maintenance to Wife.

# Facts

[3] The parties had a child, C.M., in April 2002. They married in May 2004, while Husband was in the military. After they married, they had another child, S.M., in September 2005, and D.M. in October 2006. D.M. was born prematurely and has cerebral palsy, which affects his ability to use his legs and arms. D.M.

is learning to walk with a walker, but he uses a manual wheelchair except at school, where he uses a motorized wheelchair. Husband retired from the military in 2012 after twenty-one years of service, and he receives a monthly veterans' disability payment. Husband has worked at Eli Lilly in finance and accounting for fifteen years. Wife worked in retail prior to the parties' marriage but stopped working after the marriage. She worked again in retail for a short time in approximately 2006 before D.M.'s birth. After D.M.'s birth, Wife did not return to work.

[4]     Husband filed a petition for dissolution in November 2016. At this time, Wife found employment as an instructional assistant with a school corporation. She works thirty-five hours a week and is paid $10.50 an hour. This position allows her to be home with the children after school and on school breaks. In late 2017, Eli Lilly notified Husband that his department was being moved to Ireland. At the time of the hearing, Husband anticipated losing his job in March 2018.[1] The parties reached agreements on most issues regarding the children, leaving mainly issues regarding division of the marital estate and maintenance. Husband proposed that he "take on all liabilities associated with the marital estate." Tr. Vol. II p. 33. Husband has a 401K through his employment with Eli Lilly, a pension with Eli Lilly, and a military pension. Wife requested caretaker maintenance to care for D.M. and rehabilitative

---

[1] Husband asserts that he has lost his job since the trial court's order. However, we cannot consider evidence not in the record.

maintenance to complete her college degree online through Ball State University.

[5] The trial court entered findings of fact and conclusions thereon. The trial court adopted Wife's proposed division of marital property, resulting in a 60%/40% split in favor of Wife. The trial court ordered that the parties sell the marital residence with Wife receiving the first $8,050.00 of the proceeds and the remaining proceeds split 60%/40% in favor of Wife. The trial court awarded Wife, in part, her vehicle and certain furniture; sixty percent of Husband's gross military pension payment when "such is received by [Husband] or when [Husband] is eligible to receive same;" rehabilitative maintenance in the amount of $750.00 per month for thirty-six months; $7,500 in attorney fees; $44,500.00 from Husband's Eli Lilly 401K, which was valued at $44,500.00; a property settlement judgment in the amount of $68,953.00 payable at the rate of $500.00 per month plus eight percent interest with the payments beginning after the completion of the rehabilitative maintenance payments. Appellant's App. Vol. II p. 21. Husband was awarded, in part, his Eli Lilly pension; the remainder of his military pension; any remainder of his Eli Lilly 401K; his automobile, tools, firearms, and certain furniture; and the remainder of his 2016 Eli Lilly bonus. Husband was ordered to pay the parties' debts and a portion of a handicapped accessible van in the future for Wife's use. Husband now appeals.

## Analysis

[6] Husband raises several issues regarding the trial court's division of marital property. Where, as here, a party requested findings and conclusions pursuant to Trial Rule 52, we cannot set aside the findings or judgment unless clearly erroneous. *Quinn v. Quinn*, 62 N.E.3d 1212, 1220 (Ind. Ct. App. 2016). "First, we determine whether the evidence supports the findings, and second, whether the findings support the judgment." *Id.* We affirm the trial court's findings unless no facts or inferences from the record support them, but we review legal conclusions de novo. *Id.*

[7] The division of marital property is within the sound discretion of the trial court, and we will reverse only for an abuse of discretion. *Kendrick v. Kendrick*, 44 N.E.3d 721, 724 (Ind. Ct. App. 2015), *trans. denied*. An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the trial court has misinterpreted the law or disregards evidence of factors listed in the controlling statute. *Id.* When we review a claim that the trial court improperly divided marital property, we must consider only the evidence most favorable to the trial court's disposition of the property. *Id.* Although the facts and reasonable inferences might allow for a different conclusion, we will not substitute our judgment for that of the trial court. *Id.*

[8] The trial court's division of marital property is highly fact sensitive. *Id.* A trial court's discretion in dividing marital property is to be reviewed by considering

the division as a whole, not item by item. *Id.* We will not weigh evidence, but will consider the evidence in a light most favorable to the judgment. *Id.* A trial court may deviate from an equal division so long as it sets forth a rational basis for its decision. *Id.* A party who challenges the trial court's division of marital property must overcome a strong presumption that the court considered and complied with the applicable statute. *Id.* Thus, we will reverse a property distribution only if there is no rational basis for the award. *Id.*

## I. Division of Property

Father first argues that the trial court erred by failing to make findings to support the unequal division of marital property. Indiana subscribes to a "one-pot" theory of marital property. *Morey v. Morey*, 49 N.E.3d 1065, 1069 (Ind. Ct. App. 2016) (citing Ind. Code § 31-15-7-4). Under Indiana Code Section 31-15-7-4(a), in a dissolution action, the court shall divide the property of the parties, whether:

>    (1)    owned by either spouse before the marriage;
>
>    (2)    acquired by either spouse in his or her own right:
>
>        (A)    after the marriage; and
>
>        (B)    before final separation of the parties; or
>
>    (3)    acquired by their joint efforts.

"Property" means "all the assets of either party or both parties . . . ." I.C. § 31-9-2-98(b).

> "The requirement that all marital assets be placed in the marital pot is meant to insure that the trial court first determines that value before endeavoring to divide the property." *Montgomery v. Faust*, 910 N.E.2d 234, 238 (Ind. Ct. App. 2009). Indiana's "one-pot" theory prohibits the exclusion of any asset in which a party has a vested interest from the scope of the trial court's power to divide and award. *Falatovics [v. Falatovics*, 15 N.E.3d 108, 110 (Ind. Ct. App. 2014)]. Although the trial court may decide to award a particular asset solely to one spouse as part of its just and reasonable property division, it must first include the asset in its consideration of the marital estate to be divided. *Id.* The systematic exclusion of any marital asset from the marital pot is erroneous. *Id.*

*Quinn*, 62 N.E.3d at 1223.

[10]  After determining what constitutes marital property, the trial court must then divide the marital property under the presumption that an equal split is just and reasonable. *Thompson v. Thompson*, 811 N.E.2d 888, 912 (Ind. Ct. App. 2004), *trans. denied*. Indiana Code Section 31-15-7-5 provides:

> The court shall presume that an equal division of the marital property between the parties is just and reasonable. However, this presumption may be rebutted by a party who presents relevant evidence, including evidence concerning the following factors, that an equal division would not be just and reasonable:
>
> (1)  The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.

(2) The extent to which the property was acquired by each spouse:

    (A) before the marriage; or

    (B) through inheritance or gift.

(3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of any children.

(4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.

(5) The earnings or earning ability of the parties as related to:

    (A) a final division of property; and

    (B) a final determination of the property rights of the parties.

I.C. § 31-15-7-5. "If the trial court deviates from this presumption, it must state why it did so." *Thompson*, 811 N.E.2d at 912-13; *see also Morey*, 49 N.E.3d at 1072 ("If the trial court determines that a party has rebutted the presumption of an equal division of the marital pot and decides to deviate from an equal division, then it must state its reasoning in its findings and judgment.").

[11]    The trial court here deviated from the presumption that an equal division of the marital property between the parties is just and reasonable by awarding Wife sixty percent of the marital estate. Although the trial court made findings on various subjects, the trial court then simply adopted Wife's balance sheet with a few changes and did not explain its reasoning or make specific findings on the factors discussed in Indiana Code Section 31-15-7-5. Given the lack of specific findings on the relevant factors, we conclude that remand for either an equal division of the marital property or an explanation of the reason for deviation is necessary.

## II. Military Pension

[12]    The trial court here awarded Wife sixty percent of Husband's gross military pension payment when "such is received by [Husband] or when [Husband] is eligible to receive same." Appellant's App. Vol. II p. 21. Husband argues that the trial court should have applied a coverture formula instead. Husband also argues that federal law prevented the trial court from awarding Wife more than fifty percent of his net retirement pay from his military pension.

[13]    Wife argues that Husband waived the issue by failing to raise the argument to the trial court. However, during the evidentiary hearing, Husband specifically argued that the trial court should apply a coverture formula and argued that the trial court could not order the payments through a qualified domestic relations order ("QDRO") because the parties were not married for ten years during his military service. Husband testified that they were married for eight years during his twenty-one years of military service, and his Petitioner's Exhibit 2 requested

a coverture factor of 49.98%. Given Husband's proposed equal division of the marital property, Wife would have received half of the coverture factor of the military pension under Husband's proposal. The trial court declined to apply a coverture factor and, instead, awarded Wife sixty percent of Husband's gross military pension. Husband clearly argued for the application of a coverture formula and did not waive that issue.

[14] On appeal, however, Husband cites no authority that the trial court was *required* to apply a coverture formula. Husband cites *Williams v. Williams*, 252 P.3d 998, 1006 (Alaska 2011), which applied the coverture formula, but noted that the formula was "typically used." All property, whether acquired before or during the marriage, is generally included in the marital estate for property division. *See* Ind. Code § 31-15-7-4(a). This Court has explained,

> The "coverture fraction" formula is one method a trial court may use to distribute pension or retirement plan benefits to the earning and non-earning spouses. Under this methodology, the value of the retirement plan is multiplied by a fraction, the numerator of which is the period of time during which the marriage existed (while pension rights were accruing) and the denominator is the total period of time during which pension rights accrued.

*In re Marriage of Fisher*, 24 N.E.3d 429, 433 (Ind. Ct. App. 2014) (quoting *Hardin v. Hardin*, 964 N.E.2d 247, 250 (Ind. Ct. App. 2012). We noted in *In re Marriage of Nickels*, 834 N.E.2d 1091, 1098 (Ind. Ct. App. 2005), that the parties had cited no authority for the proposition that a trial court was *required* to use a coverture fraction formula to distribute a pension or retirement plan. We further noted

that, "while a trial court may set aside to one party the value of a marital asset where the other party made no contribution to its acquisition, it is not required to do so." *Nickels*, 834 N.E.2d at 1098; *see also Morey*, 49 N.E.3d at 1071-72 (noting that the coverture fraction formula was "just one method that allows the spouse who acquired the asset to segregate what might otherwise be considered marital property from the marital pot" and that it was within the trial court's discretion to determine whether a given asset should be segregated from the marital pot for application of the coverture fraction formula"). Given Husband's failure to cite authority that the trial court was required to apply a coverture formula, we cannot say that the trial court abused its discretion by failing to do so.

[15] As for the second part of Husband's argument, 10 U.S.C.A. § 1408(e)(1) provides that "[t]he total amount of the disposable retired pay of a member payable under all court orders pursuant to subsection (c) may not exceed 50 percent of such disposable retired pay."[2] Although Husband did not raise this

---

[2] 10 U.S.C.A. § 1408(4)(A) provides:

> The term "disposable retired pay" means the total monthly retired pay to which a member is entitled less amounts which--
>
> (i)      are owed by that member to the United States for previous overpayments of retired pay and for recoupments required by law resulting from entitlement to retired pay;
>
> (ii)     are deducted from the retired pay of such member as a result of forfeitures of retired pay ordered by a court-marital or as a result of a waiver of retired pay required by law in order to receive compensation under title 5 or title 38;
>
> (iii)    in the case of a member entitled to retired pay under chapter 61 of this title, are equal to the amount of retired pay of the member under that chapter computed using the percentage of the member's

statute to the trial court, he was arguing that Wife would receive much less than fifty percent of his military pension. Consequently, it would have been unnecessary for him to make this argument. Under these circumstances, we decline to find that Husband waived the argument.

[16] In her Appellee's Brief, Wife concedes the following:

> Wife does concede that 10 U.S.C.A. § 1408 does limit the total amount of the disposable retired pay to 50% of the disposable retired pay.
>
> If the amount to be paid is appropriately based upon the net disposable pay, then, absent a waiver caused by a failure to bring this provision of Federal law to the attention of the Trial Court, such an order to require Husband to pay 50% of his net disposable retirement to Wife would be appropriate.

Appellee's Br. p. 26. Consequently, Wife concedes that, if the issue is not waived, remand for revision of the order for Husband to pay fifty percent of his net disposable pay is appropriate. We have determined that Husband did not waive the issue. Given Wife's concession, we express no opinion on the

---

disability on the date when the member was retired (or the date on which the member's name was placed on the temporary disability retired list); or

(iv) are deducted because of an election under chapter 73 of this title to provide an annuity to a spouse or former spouse to whom payment of a portion of such member's retired pay is being made pursuant to a court order under this section.

legitimacy of Husband's argument. We remand for revision of the order related to Husband's military pension in a manner consistent with Wife's concession.[3]

### III. Van

[17] Husband argues that the trial court abused its discretion by ordering him to pay sixty-five percent of the cost of a new van for Wife. The trial court ordered the following:

> It is undisputed that the present Honda van being set off to Mother cannot transport the motorized wheelchair [D.M.] uses at school and other places. The Honda van has in excess of $100,000 miles of use and logic dictates that it will have to be replaced at some time. When it is replaced, the purchase of a van that is equipped to or capable of transporting the motorized wheelchair is necessary as treatment or care for a chronic health condition of [D.M.]. Mother will have private use of the new vehicle. Mother shall pay twenty-five percent (25%) of the cost of the new vehicle and the balance shall be shared by the parties based upon their percentage share of the total income as set forth in the CSOW effective as of the date of purchase.

Appellant's App. Vol. II p. 26. Husband argues that Wife did not establish a need for the van because the parties have transported D.M. for years without the use of a handicapped accessible vehicle. Further, Husband contends that the trial court's order fails to provide guidance on the timing of the purchase, the cost of the van, financing of the van, insurance regarding the vehicle, and

---

[3] *See* Wooster, Ann K., *Construction and Application of Federal Uniformed Services Former Spouse Protection Act in State Court Divorce Proceedings*, 59 A.L.R.6th 433 (2010), for an overview of these issues.

ability of Husband to use the van when he has physical custody of D.M. forty percent of the time. Finally, Husband argues that the trial court's order does not take into account his future financial situation.

[18] The trial court's order regarding the future van is more in the nature of a child support obligation. We review decisions regarding child support for an abuse of discretion. *Mitten v. Mitten*, 44 N.E.3d 695, 699 (Ind. Ct. App. 2015). An abuse of discretion occurs when a trial court's decision is against the logic and effect of the facts and circumstances before the court or if the court has misinterpreted the law. *Id.* When reviewing a decision for an abuse of discretion, we consider only the evidence and reasonable inferences favorable to the judgment. *Id.*

[19] The child support guidelines do not directly address this issue. However, Indiana Code Section 31-16-6-2(a)(2) provides that a child support order may include, "where appropriate . . . special medical, hospital, or dental expenses necessary to serve the best interests of the child." Although the handicapped accessible van is not technically a medical expense, it does appear necessary to serve D.M.'s best interest due to his medical conditions. Although D.M. is young now, it will become more difficult to transport D.M. without a handicapped accessible van as he gets older. Consequently, we cannot say that the trial court abused its discretion by ordering Husband to contribute to the costs of the van. However, Husband's concerns regarding guidance on the timing of the purchase, the cost of the van, financing of the van, insurance regarding the vehicle, and ability of Husband to use the van when he has physical custody of D.M. forty percent of the time are well taken. We remand

for the trial court to consider those issues. We also note that perhaps a more feasible solution would be to address the issue through a modification of child support when it is necessary to purchase the van.

### IV. *Eli Lilly Pension*

[20] Next, Husband argues that the trial court abused its discretion when it valued his Eli Lilly pension. Husband argues that the trial court assigned the wrong value to the pension, improperly failed to apply a coverture factor, and failed to use a QDRO to transfer Wife's interest. The trial court here accepted Wife's value of $174,148.00, awarded the pension to Husband, and ordered Husband to pay a property settlement judgment in the amount of $68,953.00 at the rate of $500 per month with eight percent interest until paid in full.

[21] We first address the trial court's valuation of the pension. Wife's valuation of the pension was determined by Dan Andrews, who the trial court found "is a recognized expert in the field of calculating present values of defined benefit pensions." Appellant's App. Vol. II p. 21. According to Husband, Andrews used the wrong "discount rate," the wrong age of eligibility, and improperly added an administrative load. According to Husband, these alleged errors would make the value of the pension unrealistically higher. Husband testified that he does pension valuations as the course of his business and proposed a current pension value of $25,920. The trial court was presented with Andrews's valuation of the pension and Husband's valuation of the pension. Husband is merely requesting that we reweigh the evidence and judge the credibility of the witnesses, which we cannot do. *See Pitman v. Pitman*, 721 N.E.2d 260, 264

(Ind. Ct. App. 1999), *trans. denied*. Given our standard of review, we cannot say that the trial court abused its discretion in valuing the pension based upon Wife's expert's opinion.

[22] Next, we address Husband's coverture argument. Husband contends that the trial court should have applied a coverture factor of 85.78% because Husband and Wife were not married during all of Husband's employment at Eli Lilly. Although the trial court specifically refused to apply the coverture factor to Husband's military pension, the trial court did not address the application of a coverture factor to the Eli Lilly pension and included the total value of the pension in its distribution of marital assets. As with his argument concerning his military pension, *see supra*, Husband cites no authority for the proposition that the trial court was *required* to apply a coverture factor to his Eli Lilly pension. *See Nickels*, 834 N.E.2d at 1098 (holding that "while a trial court may set aside to one party the value of a marital asset where the other party made no contribution to its acquisition, it is not required to do so"); *Morey*, 49 N.E.3d at 1071-72 (noting that the coverture fraction formula was "just one method that allows the spouse who acquired the asset to segregate what might otherwise be considered marital property from the marital pot" and that it was within the trial court's discretion to determine whether a given asset should be segregated from the marital pot for application of the coverture fraction formula"). Although it was within the trial court's discretion apply a coverture formula in effectuating its division of marital property, the trial court was not required to do so.

[23]     Finally, Husband argues that the trial court should have transferred the Eli Lilly pension to Wife through a QDRO rather than a property settlement judgment. We begin by noting the following explanation of the division of pension benefits in a dissolution proceeding:

> Courts utilize a number of methods for distributing pension benefits, including an immediate offset method, a deferred distribution method, or a variation or combination of the methods. Under the immediate offset method, the court determines the present value of the retirement benefits and awards the nonowning spouse his or her share of the benefits in an immediate lump sum award of cash or property equal to the value of his or her interest. Under the deferred distribution method, the court makes no immediate division of the retirement benefits but determines the future benefits to which the nonowning spouse is entitled. Traditionally, the benefits have been stated as a share of the owning spouse's future benefit, and payment can be made directly to the nonowning spouse by the plan administrator under certain circumstances or payment can be ordered to come directly from the owning spouse.

> Several fact situations may favor the use of an immediate offset method, including where the present value of the pension is relatively modest, the parties are highly litigious, the separating parties are relatively young, and the receiving spouse has immediate and substantial financial need. Other fact situations may favor a deferred distribution method, including where there is not sufficient other tangible property remaining in the marital estate so that a present award is possible, there is an unusually substantial risk that benefits will never be received, the present value of benefits is difficult to compute with reasonable accuracy, and both spouses have no other steady source of income for their retirement years.

It is also possible to apply both the deferred distribution and immediate offset methods in a single case. One such way to combine the methods is to order an offsetting cash award payable in installments. Such an award can give the benefits of immediate offset in a case where there are not sufficient funds available for an immediate cash payment. Like the immediate offset method, deferred offset awards are limited by the liquid funds available in the marital estate. However, the limitation is not as severe as with an immediate offset award, because a deferred award is spread out over time, but the payor must still have sufficient liquid funds to make the installment payments.

*Kendrick*, 44 N.E.3d at 726-27 (internal citations omitted).

[24] Here, the trial court utilized the immediate offset method, and Husband advocates using the deferred distribution method through a QDRO. State courts are "authorized in dissolution actions to order a pension plan administrator to distribute pension benefits to an alternate payee pursuant to a QDRO." *Ryan v. Janovsky*, 999 N.E.2d 895, 898 (Ind. Ct. App. 2013), *trans. denied*. "A QDRO has been characterized as any order made pursuant to a state domestic relations law which 'creates or recognizes the existence of an alternative payee's right' to pension benefits." *Id.* (quoting *Hogle v. Hogle*, 732 N.E.2d 1278, 1280 n.3 (Ind. Ct. App. 2000), *trans. denied*).

[25] Wife had an immediate and substantial financial need given the lack of cash marital assets, her lack of recent employment history, her new employment at a school, her need to care for D.M., and her need to locate housing suitable for D.M. On the other hand, the lack of cash marital assets resulted in an extremely lengthy repayment schedule for the property settlement judgment.

Combined with Husband's other obligations under the dissolution decree, Husband claims that he is left in a dire financial situation. The trial court here was presented with a difficult situation. Neither the immediate offset method nor the deferred distribution method through a QDRO would result in an ideal situation for both parties. Given the options here, we simply cannot say that the trial court abused its discretion in ordering the property settlement judgment rather than a deferred distribution of the pension through a QDRO.

### V. Rehabilitative Maintenance

Next, Husband argues that the trial court erred by ordering him to pay rehabilitative maintenance to Wife. The trial court here ordered Husband to pay $750 per month to Wife for thirty-six months as rehabilitative maintenance. According to Husband, Wife offered no evidence to support her personal belief that she needed a college degree to obtain a position similar to the one she held before staying home to care for the children. Husband also points out that Wife only asked for $500 per month in rehabilitative maintenance.

"The trial court's power to award spousal maintenance is wholly within its discretion, and we will reverse only when the decision is clearly against the logic and effect of the facts and circumstances of the case." *Spivey v. Topper*, 876 N.E.2d 781, 784 (Ind. Ct. App. 2007). "'The presumption that the trial court correctly applied the law in making an award of spousal maintenance is one of the strongest presumptions applicable to the consideration of a case on appeal.'" *Id.* (quoting *Fuehrer v. Fuehrer*, 651 N.E.2d 1171, 1174 (Ind. Ct. App. 1995), *trans. denied*). "A trial court may award only 'three, quite limited'

varieties of post-dissolution maintenance: spousal incapacity maintenance, caregiver maintenance, and rehabilitative maintenance." *Zan v. Zan*, 820 N.E.2d 1284, 1287 (Ind. Ct. App. 2005) (quoting *Voigt v. Voigt*, 670 N.E.2d 1271, 1276 (Ind. 1996)). Indiana Code Section 31-15-7-2(3) governs the award of rehabilitative maintenance, which is at issue here, and provides:

> After considering:
>
> (A) the educational level of each spouse at the time of marriage and at the time the action is commenced;
>
> (B) whether an interruption in the education, training, or employment of a spouse who is seeking maintenance occurred during the marriage as a result of homemaking or child care responsibilities, or both;
>
> (C) the earning capacity of each spouse, including educational background, training, employment skills, work experience, and length of presence in or absence from the job market; and
>
> (D) the time and expense necessary to acquire sufficient education or training to enable the spouse who is seeking maintenance to find appropriate employment;
>
> a court may find that rehabilitative maintenance for the spouse seeking maintenance is necessary in an amount and for a period of time that the court considers appropriate, but not to exceed three (3) years from the date of the final decree.

[28] The trial court's findings regarding rehabilitative maintenance follow:

10.	Mother was a "stay-at-home-mom," except for a short time at the beginning of the marriage. Mother, prior to staying home with the children, worked in retail. Her uncontroverted testimony is that a college degree would now be necessary for her to secure the same retail job she worked in the early years of the marriage. Mother does not have a college degree. During the marriage, Mother did contribute, besides her work as a "stay-at-home mom" by doing yard sales and refurnishing furniture and working part-time at Kohl's. Father told her to quit the Kohl's job and she never returned to work outside the home.

11.	Retail work can include working late into the evening and weekends. Hours vary based upon the employer.

12.	Once this cause was filed, Mother obtained a job with the Mt. Vernon School Corporation as an Instructional Assistant ("IA"). As an IA, she works closely with children with disabilities.

13.	The hours she works as an IA mirror the times that the children are in school. The children also attend the Mt. Vernon School Corporation. She does not work evenings or weekends, goes into work at approximately the same time the children do and gets off work at close to the same time as the children are released from school.

14.	Mother has been the parent who has assumed the responsibility with regard to [D.M.'s] therapy and IEPs.

15. Father testified he had flexibility in his job at Eli Lilly & Co. with regard to whether he could work at home and control his hours.

16. Mother makes $10.50 per hour and works the 180 school-day calendar. Her pay, annualized, is Two Hundred Sixty-eight Dollars and Fifty-six Cents ($268.56) per week.

17. Father earns One Hundred Five Thousand Dollars ($105,000.00) per year at Eli Lilly and further earns One Thousand Three Hundred Twenty-three Dollars ($1,323.00) per month from a Veteran's disability payment. For 2016, payable in 2017, he earned a gross bonus from Lilly of Twenty Thousand Seven Hundred Thirty-three Dollars and eighty-four Cents ($20,733.84). Father has a Bachelor's degree in Biochemistry and a Bachelor's degree in Finance and has worked at Lilly for a number of years.

* * * * *

28. Mother has investigated taking classes at Ball State University and knows the present tuition is approximately Three Hundred Four Dollars ($304.00) per credit hour. She also knows that tuition will increase, probably in 2020 but she cannot predict the amount of increase.

29. Mother needs 24 to 30 hours to obtain an Associate degree in Business. [H]er teaching degree would be obtained after the Associate degree. The time to obtain the appropriate degrees could exceed thirty-six (36) months.

* * * * *

33.    Mother qualifies for Rehabilitative Maintenance as defined by Indiana statute.

* * * * *

20.    Mother is entitled to rehabilitative maintenance and Father shall pay one [sic] Seven Hundred and Fifty Dollars ($750.00) per month for thirty-six (36) months as rehabilitative maintenance. Said payments shall be paid beginning on the 1st day of the first month following the entry of this Decree.

Appellant's App. Vol. II pp. 19-22, 28.

[29]    Husband does not specifically challenge any of these findings. Rather, he argues that Wife did not submit actual evidence other than her opinion in support of her assertion that she needed a college degree. Husband's argument is largely a request to reweigh the evidence and judge the credibility of the witnesses, which we cannot do. *See Pitman*, 721 N.E.2d at 264. The trial court gave credit to Wife's testimony, and we cannot say that the findings on this issue are clearly erroneous. Consequently, we cannot say that the trial court's award of rehabilitative maintenance is erroneous. We do, however, have concerns over the trial court's sua sponte award of $750 per month where Wife was only requesting $500 per month in rehabilitative maintenance. Tr. Vol. II p. 198. We reverse that portion of the order and, on remand, direct the trial

court to reduce the rehabilitative maintenance to $500 per month for thirty-six months.

## Conclusion

[30] We remand for the trial court to enter either an equal division of the marital property or an explanation of the reason for a deviation. Given Wife's concession regarding Husband's military pension, we reverse and remand for an order requiring Husband to pay fifty percent of his disposable retired pay of the military pension. We affirm the trial court's order that Husband contribute to the cost of a van to transport D.M. However, we remand for the trial court to clarify the details regarding such purchase. We affirm the trial court's decisions regarding the Eli Lilly pension valuation. Finally, we affirm the trial court's award of rehabilitative maintenance, but remand for the trial court to reduce the rehabilitative maintenance award to $500 per month for thirty-six months. We affirm in part, reverse in part, and remand.

[31] Affirmed in part, reversed in part, and remanded.

Vaidik, C.J., and Pyle, J., concur.